## FLICK'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12160.

Circuit Court of Appeals, Fifth Circuit.

March 12, 1948.

As Corrected on Denial of Rehearing
April 16, 1948.

SIBLEY, Circuit Judge, dissenting.

Albert R. Connelly, and Cravath, Swaine & Moore, all of New York City, for petitioners.

Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, and Charles E. Lowery, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., Theron L. Caudle, Asst. Atty. Gen., and Sewall Key, George A. Stinson, Robert N. Anderson and L. W. Post, Sp. Assts. to the Atty. Gen., for respondent.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

On December 9, 1935, R. Jay Flick created an insurance trust with Bankers Trust Company, a New York corporation, and Robert I. Ingalls, Jr., a resident of Alabama, as trustees, to which trust the decedent on that date made complete, absolute, and irrevocable assignments of six paid-up life insurance policies. Data in reference to these policies may be synopsized as follows:

These six policies had a cash value at the date of the making of the trust of $174,004.12. As noted above, four were single premium policies taken out within six weeks of the date of the creation of the trust.

The trust instrument provided that the trustees should:

"* * * pay the net income, in as nearly as practicable equal monthly instalments, to the Insured's wife, Henrietta Ridgely Flick, during her life, and from and after her death, if the Insured's daughter Eleanor Flick Ingalls, shall then be living, to said Eleanor Flick Ingalls during her life, and upon the death of the survivor of said Henrietta Ridgely Flick and said Eleanor Flick Ingalls,

"(A) if the Insured shall already have died, the Trustees shall divide and set apart the then principal of the trust estate into separate funds for the issue then living of the Insured, in equal shares per stirpes, * * *"[1]

Four years after creating the trust, the decedent, on December 4, 1939, made a will purportedly revoking all former wills and providing also for the creation of a

| Issue Date | Company | When Paid Up | Face Amount | Amount Collected |
|---|---|---|---|---|
| Mar. 3, 1897 | Northwestern Mutual Life Insurance Co., No. 365032 | 1917 | $ 20,000 | $ 36,300.00 |
| Aug. 29, 1911 | Same company, No. 891599 | 1931 | 15,000 | 15,251.00 |
| Nov. 1, 1935 | Mutual Benefit Life Insurance Co., No. 1702718 | Single premium | 80,000 | 80,435.99 |
| Nov. 1, 1935 | Same company, No. 1702719 | Single premium | 20,000 | 20,109.00 |
| Nov. 22, 1935 | Connecticut Mutual Life Insurance Co., No. 887364 | Single premium | 32,500 | 32,638.74 |
| Nov. 26, 1935 | Prudential Insurance Co., No. 9086294 | Single premium | 50,000 | 50,429.74 |
| | Total ........................ | | $217,000 | $235,164.47 |

---

[1] The trust also provided: "Anything herein contained to the contrary notwithstanding, any dividend or dividends which may be received by the Trustees on any of the policies during the life of the Insured may, in the absolute discretion of the Trustees, be employed by the Trustees in the purchase of additional paid-up insurance on the life of the Insured (under a policy or policies

trust, out of the residue of the estate, not including the insurance policies, however, but distributable to the same beneficiaries as in the insurance trust.

In the year of making the trust [1935] decedent made a return and paid the gift tax on the value of the insurance policies assigned to the trust estate. At the time of the creation of the trust decedent was sixty-four years of age and in good health. His sixty-three-year old wife was an invalid, and had been for a number of years; nevertheless, she and the other contingent beneficiaries survived him.

Decedent, while a resident of Palm Beach, Florida, died on August 24, 1940, nearly five years after the creation of the trust.

The Commissioner, in the determination of the gross estate of the decedent, added the sum of $235,164.47, representing the net proceeds received by the trustees from the six insurance policies.[2]

It was stipulated that at the time the trust was established the decedent was in good health and that the trust was not created in contemplation of death insofar as it concerned the health of the settlor. Between the date of the making of the trust agreement and the decedent's death there was no change in the securities, but

the trustees, meanwhile, collected $7,993.89 as dividends on the policies.

It was shown in evidence without dispute that: the estate of decedent consisted largely of stocks against which there were debit balances of $140,000; that the decedent did not discuss inheritance taxes with the attorney who prepared the trust agreement or with his family; that he did, however, display concern over rising income taxes; that he advised his attorney that his primary interest in the creation of the trust was a desire to provide security for his invalid wife.

The Tax Court found that the dominant purpose of the deceased in creating the trust was not advancing age or insecure health, but that the very nature of the decedent's dispositions showed that a desire to make provision upon the event of his death predominated, and that the transfers of the insurance policies to the trust estate "were substitutes for testamentary dispositions." In reaching this conclusion The Tax Court stated that it was influenced by the following considerations: (a) that the subject matter of the transfer, to wit, policies of insurance, would acquire their greatest value upon maturity at the death of the insured; (b) the circumstances of the acquisition of the policies; (c) the fact that the trust favored the

---

naming the Trustees as beneficiaries) * * *
* * * * * *
"If in the opinion of the Trustees it appears for the best interests of the beneficiaries of the Will of the Insured or of those persons who may take his property pursuant to the laws relating to intestacy, or any of them, then the Trustees may purchase from the Executors of the Will or Administrators of the effects of the Insured and retain as an investment, without liability for loss or depreciation and without regard to whether or not such property is within the class of investments permitted for trust funds by the laws of the State of New York or of any other State or jurisdiction, any securities or other property, real or personal, belonging to the estate of the Insured; and without liability for loss may make secured or unsecured loans to said Executors or Administrators upon such terms as seem to them desirable. The decision of the Trustees concerning the

propriety of making such purchases or loans shall be binding and conclusive upon all persons and corporations interested in this trust, or in the estate of the Insured."

[2] The Commissioner, in the notice of deficiency, stated: " * * * the value of the proceeds of six certain policies of insurance taken out by decedent on his own life and by him transferred to the trust created December 9, 1935 formed a part of his gross estate within the meaning of section 811(g) of the Internal Revenue Code. In the alternative, the value of the proceeds of said policies of insurance formed a part of decedent's gross estate for the reason that they were transferred in trust by decedent on or about December 9, 1935 in contemplation of, or intended to take effect in possession or enjoyment at or after his death within the meaning of section 811(c) of the Internal Revenue Code."

same beneficiaries and made the same distributory provisions as to the residuum of decedent's estate as were made in his will; (d) that the trustees in the insurance trust were the same as the executors of the will; [3] (e) that the provision in the trust agreement authorizing his trustees to purchase from his executors or administrators under his will any securities or other property, real or personal, belonging to his estate denoted an intimate connection in the decedent's mind between the estate that would occur on his death and the trust; (f) that the creation and design of the trust were such as heavily emphasized considerations connected with the death of the decedent. The Tax Court in summary made the following statement: "All of these evidences look in the direction of a provision for the integration of the proceeds of the insurance and the property devolving at death, creating persuasive inferences of a corresponding motivation in the mind of the individual whose conduct they reflect, and consistent only with testamentary motivation."

The Tax Court thought that "Such other motives as a desire to free his property from the hazards of stock market fluctuations and to avoid the incidence of the income tax could have been accomplished in so many other ways that even were there more convincing evidence of their existence, they would yet weigh negligibly in a determination of decedent's impelling purpose."

■ This case must be tried by the law as it existed prior to August 24, 1940, the date of the death of the settlor. The 1942 amendment to Sec. 811, Title 26 U.S.C.A. Internal Revenue Code, expressly provided that it should be applicable only to those who died subsequent to October 21, 1942. Sec. 811(c), prior to the 1942 amendment, provided that in determining the gross estate of the decedent there should be included the value at the time of his death of all property of the decedent; Sec. 811(a) required inclusion of the interest in any property of decedent; Sec. 811(c) required inclusion "To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; * * * Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter".

Sec. 811(g) before the 1942 amendment

---

[3] The Tax Court made the following statement, which, together with the inferences drawn thereunder, is without any support in the record and unjustified: "We do not know that a will was executed at about the time the trust was created, but it seems highly probable that there had been a will prior to the one which was ultimately probated, and that a will making the same provisions was in effect when the trust was set up. At least the burden on petitioners of proving the contrary has not been met. A man of decedent's wealth and business experience could hardly be expected to wait until he became 68 years of age before executing his first will." The conclusion that the decedent must have made a will because of the authorization to the trustees in the trust agreement to buy property from the executors of the will of the decedent overlooks the fact that the authorization was that "If in the opinion of the Trustees it appears for the best interests of the beneficiaries of the Will of the Insured or of those persons who may take his property *pursuant to the laws relating to intestacy* * * * then the Trustees may purchase from the Executors of the Will or *Administrators* of the effects of the Insured" and is no more indicative that he had previously made a will providing for executors than that he had not made a will and contemplated administrators to handle his estate.

provided that proceeds of life insurance "to the extent of the amount *receivable by the executor* as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life" shall be included in his gross estate. (Emphasis added.)

Let us first see if under the law any of the proceeds of the insurance policies were "receivable by the executor". The policies were made payable to the "executors, administrators, or assigns" of the insured, but all questions as to the title and ownership of property by the decedent must be determined by the law controlling the ownership and disposition of personal property of the state of the residence of the decedent, which in this case was Florida.[4] Federal law does not settle questions of title to property.

We must, therefore, consider the statutes of Florida controlling the disposition of the proceeds of life insurance policies.

Sec. 222.13 of Florida Statutes Annotated provides as follows:

"222.13 Life insurance policies; disposition of proceeds "Whenever any person shall die in this state leaving insurance on his life, the said insurance shall inure exclusively to the benefit of the child or children and husband or wife of such person in equal portions, or to any person for whose use and benefit such insurance is declared in the policy; and the proceeds thereof shall in no case be liable to attachment, garnishment or any legal process in favor of any creditor of the person whose life is so insured, unless the insurance policy declares that the policy was effected for the benefit of such creditor; provided, however, that whenever the insurance is for the benefit of the estate of the insured or is payable to the estate or to the insured, his executors, administrators or assigns, the proceeds of the insurance may be bequeathed by the insured to any person whatsoever or for any uses in like manner as he may bequeath or devise any other property or effects of which he may be possessed, and which shall be subject to disposition by last will and testament."

Sec. 222.14 exempts the cash surrender values of life insurance policies from legal process in favor of creditors.

The Supreme Court of Florida in numerous cases has held that the proceeds of life insurance policies, even though payable to the executors, administrators, and assigns of the insured, do not pass to the executor or administrator of the insured's estate but that the proceeds go directly to the beneficiaries and are not available for paying the debts of the deceased nor the expenses of his administration. See Bradford v. Watson, 65 Fla. 461, 62 So. 484; Pace v. Pace, 19 Fla. 438; Lowe v. Lowe, 142 Fla. 266, 194 So. 615.

We have held to the same effect in New York Life Ins. Co. v. Valz, 5 Cir., 141 F.2d 1014.

Moreover, this Court, speaking through Judge Holmes, has held, in Webster v. Commissioner of Internal Revenue, 5 Cir., 120 F.2d 514, that the proceeds of life insurance policies, where the insured's executors, administrators, or assigns were named as beneficiaries—as in the policies here—did not pass to the executor of the insured's estate so as to require the inclusion thereof in the insured's gross estate for the purpose of determining the federal estate tax. Th Circuit Court of Appeals for the Sixth Circuit, construing a similar Tennessee statute in Proutt's Estate v. Commissioner, 6 Cir., 125 F.2d 591, 592, also held that the proceeds of such a policy were not includable in the gross estate of the decedent for federal estate tax purposes.[5]

---

[4] Helvering v. Stuart, 317 U.S. 154, text 161, 162, 63 S.Ct. 140, 87 L.Ed. 154.

[5] In United States v. First National Bank & Trust Co. of Minneapolis, 133 F.2d 886, 888, the Circuit Court of Appeals for the Eighth Circuit, dealing with an insurance trust set up in the will, rather than in a separate trust instrument as here, said: "Here, by virtue of the statutes of Wisconsin and of the decree of the Wisconsin court in whose jurisdiction the will was probated and under whose authority the estate was

It clearly appears, therefore, that even if the decedent had not executed the transfers to the trust estate of the insurance policies, none of the proceeds would have been "receivable by the executor as insurance under policies taken out by the decedent upon his own life."

It is also necessary to consider the second clause of Sec. 811(g), or that part which provides for the inclusion in the decedent's gross estate of life insurance to the extent of the excess of $40,000 of the amount "receivable by all other beneficiaries" as insurance under policies taken out by the decedent upon his own life. We have seen that the executor would not be a beneficiary under the Florida statute as to the proceeds of life insurance merely because the policies were payable to the executor or administrator, and it is now necessary to ascertain what happens to the amount receivable "by all other beneficiaries" in excess of $40,000. Under the statute in existence prior to the amendment of 1942 the first $40,000 of such insurance is exempt, Section 811(g), Title 26, U.S.C.A. Int.Rev.Code. The proceeds of the policies receivable by beneficiaries other than the executor, subject to the exemption of $40,000, should be included in the gross estate of the decedent here unless the transfer to the trust was shown not to have been made in contemplation of

death.[6] We shall later discuss this phase of the case, but before leaving a consideration of the effect of the Florida statute which makes the wife and children of the insured the statutory beneficiaries of all life insurance payable to the executors, administrators, or assigns of the insured, we wish to mention the fact that this statute appears not to have been called to the attention of The Tax Court. Had the statute been urged upon that Court, it doubtless would have concluded that the transfer of the policies was not in the nature of a distribution of the property of the decedent. The policies as issued were payable, under the statute, to the widow and daughter of the insured—the primary beneficiaries named in the trust. Therefore, the trust did not create the wife and daughter as new beneficiaries of the policies but it did guarantee them against any subsequent change of beneficiaries by the insured, and did make all income from those policies a fixed right immediately and irrevocably available to those beneficiaries. These considerations, if they had been put before the judge of The Tax Court who decided the case, would, no doubt, have weighed most heavily against his conclusion that the transfer was dominated by a death motive.

Finally, we shall consider whether or not the trust, created five years before

administered, the proceeds of the insurance were turned over to the trustee named in the policies for the benefit of the widow and daughter of the insured as provided in the will. In our opinion no reasonable construction of § 302(g) would warrant a holding that these proceeds were 'receivable by the executor.'

"Any further discussion of the case would extend this opinion unnecessarily. Our conclusion is supported by able opinions of the 1st, 5th and 6th Circuit Courts of Appeals in cases arising under the same statute and in which the facts are similar. See Proutt's Estate v. Commissioner, 6 Cir., 125 F.2d 591; Webster v. Commissioner, 5 Cir., 120 F.2d 514; Boston Safe Deposit & Trust Co. v. Commissioner, 1 Cir., 100 F.2d 266; Commissioner v. Jones, 6 Cir., 62 F.2d 496. See, also, Lucky v. Commissioner, 2 B.T.A. 1268."

In Marmaduke B. Morton, Administrator v. Commissioner, 23 B.T.A. 236, the Board of Tax Appeals, in discussing the

Congressional purpose of inserting clause (g) in the Estate Tax Act to include insurance, said: "It therefore seems clear to us that Congress, in enacting section 302 of the Revenue Act of 1924, intended that there should be included in the gross estate of a decedent the full amount of his life insurance which after his death is subject to the payment of charges against his estate and the expenses of its administration, and which is subject to distribution as part of his estate, and that it was not the intention of Congress, in enacting subdivision (g) of that section to exempt from taxation life insurance meeting such tests, although in terms payable to some one other than the executor."

[6] According to the stipulation there were policies other than the ones here involved in excess of $40,000, payable to named beneficiaries, which were included in the gross estate, against which it is assumed the $40,000 exemption was allowed.

the death of the decedent, was such that it should not, under the federal estate tax statutes, be presumed to have been made in contemplation of death, in which event the proceeds of the insurance would not be includable in the gross estate of the decedent even though the Florida statute were not applicable.

We should not lose sight of Sec. 810, Title 26, U.S.C.A. Int.Rev.Code,—the basic section—the one that levies the tax. It provides that "A tax * * * shall be imposed upon the *transfer of the net estate* of every decedent, citizen or resident of the United States, dying after the date of the enactment of this title." (Emphasis added.)

The "net estate" of decedent is that part of the gross estate which remains after the costs and expenses, etc., have been paid. The gross estate of a decedent, is, by Sec. 811, Internal Revenue Code, measured by the property or rights that decedent owned "at the time of his death". It cannot be measured by property that in his lifetime he definitely, irrevocably, absolutely conveyed away, unless he conveyed it away in contemplation of death—actual or synthetic. Unless there is a transfer by death or a prior transfer in contemplation of death, there will be no tax.

It is considered that the decedent was in good health at the time of creating the trust and that it was not made in contemplation of death in the usual sense in which men contemplate death. It is undisputed that the transfer here vested the complete possession and enjoyment of the insurance policies in trustees for the use and benefit of the beneficiaries at the time of the creation of the trust. The gift was absolute. The policies were fully paid up. They had a cash surrender value of $174,000. There was no right of reversion or control whatsoever retained by the donor. The Trustees had the right to cash in the policies whenever they saw fit. They collected $7,993.89 as dividends on the policies between the date of the making of the trust and the death of the decedent. The donor did not retain for his life, or for any period, the possession or enjoyment of, or the right to the income from, the policies, or the right, either alone or in conjunction with any person, to designate the persons who should possess or enjoy the property or the income. The trust instrument completely and absolutely divested the donor of any and all title, possession, enjoyment, connection, or control whatsoever in, to, or with the assets of the trust.

What was said in Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 76, 80 L.Ed. 29, 100 A.L.R. 1239, may aptly be said here: "If, therefore, no interest in the property involved in a given case pass 'from the possession enjoyment, or control of the donor at his death,' there is no interest with respect to which the decedent has created a trust intended to take effect in possession or enjoyment at or after his death. The grantor here, by the trust instrument, left in himself no power to resume ownership, possession, or enjoyment, except upon a contingency in the nature of a condition subsequent, the occurrence of which was entirely fortuitous so far as any control, design, or volition on his part was concerned. After the execution of the trust he held no right in the trust estate which in any sense was the subject of testamentary disposition. His death passed no interest to any of the beneficiaries of the trust, and enlarged none beyond what was conveyed by the indenture."

A gift inter vivos is taxable if its provisions are intended to take effect in possession or enjoyment at or after death, but it is undeniable that the gift here was complete in all respects.

Can it reasonably be concluded that a man has made a transfer in contemplation of death merely because he executes a trust instrument divesting himself of all possible use and enjoyment of life insurance which he transfers to those who would automatically have received the proceeds of such insurance upon his death even if the insured had not created the trust?

Should it be concluded that the settler was thinking only of the results to be achieved after his death when in the creation of the trust he gave the trustees power to cash the insurance policies immediately without waiting for his death, and also gave to them the present right—

which they exercised—to collect the dividends from the policies from that day forward?

By what process of reasoning can it truly be said that A is indulging in a substitute for testamentary disposition when he makes an irrevocable gift to B now of that which the law would have given B in fuller measure if A by inaction had merely allowed the gift to become complete after his death?

Does an absolute gift, in praesenti, wherein the donor—in robust health—divests himself of all title, right of reversion, or right of control, and wherein the possession and enjoyment and title of property is irrevocably placed in the hands of trustees for the present use and benefit of donees, support an inference that the gift was "in contemplation of or intended to take effect in possession or enjoyment at or after his death"?

Can the estate of a decedent be rightfully adjudged liable for a tax on property as being "receivable by the executor" which never was, and never could become, the property of that estate?

Is there anything odd or significant in the fact that the testator, four years after making the trust agreement, made a will wherein his wife and daughter were likewise the beneficiaries of the residuum of his estate?

It is not necessary for us to state the obvious answers to these several questions.

Neither federal nor state law proscribes the placing of property in trust to be managed for the benefit of an invalid wife. The estate tax statute does not debar such an arrangement, but merely says to the donor, "If you do this in contemplation of its becoming effective only after your death, or if you reserve unto yourself the possession or enjoyment, or the income, or the right to the income, or the right of reverter, or the right to designate such persons as you wish to possess or enjoy the property, or the power of termination, alteration, or amendment, your gift shall be considered as in the nature of a testamentary disposition, or as a palpable effort to evade estate taxes, which you shall not escape."

Even though it be true, as The Tax Court reasoned, that all life insurance reaches its greatest value at the death of the insured, nevertheless Congress has not undertaken to convert a valid, absolute, complete gift intervivos into a gift causa mortis or a substitute for testamentary disposition merely because the gift will have a greater value after the death of the donor.

The fact that one purchases paid-up, single premium life insurance policies is not nearly as indicative that it was acquired in contemplation of death as would be the case had he acquired such policies on the annual premium plan. Evidently one who expects an early dissolution would be much more interested in procuring his policies by paying an annual premium during his remaining short span of life than he would be in paying a single premium, and there is nothing evidentiary in the purchase, or the manner of purchase, of the insurance in question here that justified The Tax Court in saying that the creation and design of the trust were such as heavily emphasized considerations in connection with the death of the decedent.

In Allen v. Trust Co. of Georgia, 326 U.S. 630, 66 S.Ct. 389, 392, 90 L.Ed. 367, Mr. Justice Douglas, in an opinion affirming this Court, said: "On the other hand, every man making a gift knows that what he gives away today will not be included in his estate when he dies. All such gifts plainly are not made in contemplation of death in the statutory sense. Many gifts, even to those who are the natural and appropriate objects of the donor's bounty, are motivated by 'purposes associated with life, rather than with the distribution of property in anticipation of death.' United States v. Wells, supra, 283 U.S. at page 118, 51 S.Ct. [446] at page 452, 75 L.Ed. 867. Those motives cover a wide range. See 1 Paul, Federal Estate & Gift Taxation (1942) §§ 6.09 et seq. 'There may be the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought of death.' United States v. Wells, supra, 283 U.S. at page 119, 51 S.Ct. at page 452, 75 L.Ed. 867."

The only cases cited by The Tax Court were its own case of Estate of Arthur D. Cronin, 7 T.C. 1403, which was reversed by the Sixth Circuit on December 3, 1947, and our case of Thomas v. Graham, 5 Cir., 158 F.2d 561, which dealt with the taxability of a trust having an implied retention of a reversionary interest in the corpus, which retention has required the assets of such a trust to be included in the gross estate of the donor ever since the decision in Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368.

In the opinion of the Sixth Circuit reversing The Tax Court in the Cronin case it was said: " * * * we think it may not, in truth, be said that financial security residing in complete control of loan and surrender value is not present enjoyment of the subject matter of a gift, even though its actual utilization may prove to be unnecessary."

The Supreme Court, in Burnet v. Wells, 289 U.S. 670, text 679, 53 S.Ct. 761, 764, 77 L.Ed. 1439, said: "A policy of life insurance is a contract susceptible of ownership like any other chose in action."

This Court, speaking through Judge Holmes, said, in Griffin v. McCoach, 5 Cir., 116 F.2d 261, 264: "Modern policies of insurance are no longer mere indemnity contracts, but are property and have property values." (Citing Grigsby v. Russell, 222 U.S. 149, 32 S.Ct. 58, 56 L.Ed. 133, 36 L.R.A., N.S., 642, Ann.Cas.1913B, 863.)

See also the following statement from Montgomery's Federal Texas—Estates, Trusts, and Gifts, 1947-48, page 548:

"Under the prior regulations and the present Code as amended, the date of the approval of T. D. 5032, January 10, 1941, is of extreme importance. See 404(c) of the 1942 Act [26 U.S.C.A. Int.Rev.Code, § 811 note] quoted supra page 546.

"In the case of a policy on which no premiums were paid after January 10, 1941, none of the proceeds will be included in the decedent's gross estate if, by an irrevocable assignment or some other means, the decedent had parted with all incidents of ownership despite the fact that all of the premums had been paid by him."

It is not to be overlooked that all the policies in this case were fully paid up. The trustees could have gone to the companies or to the bank and borrowed money on them. They could have surrendered the policies, taken the cash surrender value, and invested the proceeds in securities of their own choosing without leave or hindrance from the insured. They did collect the dividends for five years before the insured's death. Under the Florida Statute such policies could have been assigned as security for a loan [Bancroft v. West, 128 Fla. 193, 174 So. 327], or the proceeds could have been bequeathed in the same manner as "any other property or effects of which he may be possessed" [222.13, F.S.A.]. Concededly, the insurance payable to beneficiaries other than the executor would have been includable in the gross estate of the decedent under Sec. 811(g) had the insured not assigned the insurance irrevocably, and "without provisions for return or reversion of either the corpus or the income to him," by a transfer whereby the use and enjoyment took effect immediately.

The Tax Court thought that since the insurance policies would acquire their greatest value upon the death of the insured the policies were of the character of testamentary dispositions. Any conclusion that makes value the test of whether the asset is to be includable in the estate of a decedent is unsound. Value of a decedent's interest at the time of death determines the quantum, not taxability, of such an interest.

In Walker v. United States, 8 Cir., 83 F.2d 103, 104 it was stated that "All life insurance on life of decedent is not subject to estate tax because per se testamentary" in character.

In Fidelity & Columbia Trust Co. v. Glenn, Collector of Internal Revenue, D. C., 39 F.Supp. 822, 825, the Court said: "All life insurance is to a large extent testamentary in character, in that it contemplates the transfer of property upon the death of the insured in accordance with the directions of the decedent. But that characteristic does not in itself make it taxable * * *." (Citing the following

cases: Walker v. United States, 8 Cir., 83 F.2d 103; Ballard v. Helburn, 9 F.Supp. 812; Commissioner v. Sharp, 3 Cir., 91 F.2d 804.)

The question here is not the characteristics of the subject matter, nor its value, but is the same as stated by Mr. Justice Frankfurter in Helvering v. Hallock, supra [309 U.S. 106, 60 S.Ct. 447]: "Whether the transfer made by the decedent in his lifetime is 'intended to take effect in possession or enjoyment at or after his death' by reason of that which he retained, is the crux of the problem."

The insured retained nothing in this case.

Section 811(g) is a part of Section 811. When subparagraph (g) is placed in immediate continuity to the basic and initial paragraph, the reading is as follows:

"811. The value of *the gross estate of the decedent* shall be determined by including the value *at the time of his death* of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

"(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life." (Emphasis supplied.)

The problem, therefore, is to find the value to *the gross estate of the decedent at the time of his death* of life insurance receivable by the executor or receivable by all other beneficiaries under policies taken out by the decedent upon his own life. In the present case there is no value to the gross estate of the decedent at the time of the death of the insured of that which he had theretofore transferred unless he had transferred it in the face of the restrictions of Section 811(c). Clearly the trust which he set up was in no wise out of harmony with subsection (c), which must be applied to determine whether a trust estate should be included in the estate of a decedent after ascertainment of the value under Sec. 811 and subsection 811(g).

When the opinion of The Tax Court is shorn of the considerations revolving around the subject-matter of life insurance, and when it is made known that the beneficiaries of the trust were by state statute the beneficiaries of the insurance policies, without the execution of the trust agreement, and when it is seen that the proceeds of the life insurance policies in question would never, under the trust instrument or under the law, become a part of the estate of the decedent, would never be subject to payment of debts or to be administered by an administrator or executor, would never revert to the ownership, possession, enjoyment, or control of the decedent, would never be subject to any power in him to amend or to designate others than the parties named in the trust to possess or enjoy the property or its fruit, would not have to be deferred in use and enjoyment by the beneficiaries until after the death of the insured, there will be found to be a complete absence of evidence, or of evidentiary basis, for the drawing of a reasonable inference to support the finding of The Tax Court that the trust was made in contemplation of death.

The judgment of The Tax Court is reversed.

SIBLEY, Circuit Judge (dissenting).

Much administrative and judicial travail can, I think, be avoided by applying the simple, plain words of the statute which have been in it since 1918, (See Lewellyn v. Frick, 268 U.S. 238, 45 S.Ct. 487, 69 L.Ed. 934), which require to be included in the gross estate of a decedent the value of all property, "(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life". This court has very recently been admonished that plain words in an Act of Congress are to be given their full effect by the courts notwithstanding serious doubts of constitutionality may arise, and that the question of constitutionality ought to be faced and

decided and not evaded by construction. United States v. Sullivan, 68 S.Ct. 331. The words here are plain and no question of constitutionality is engendered by their full application.

The Commissioner here included the net amount received by "other beneficiaries" (the $40,000 exemption having been exhausted by other insurance) on these policies undeniably taken out by the decedent on his own life with all premiums paid by him, on two grounds: "The value of the proceeds * * * formed a part of his gross estate within the meaning of Section 811(g) of the Internal Revenue Code. In the alternative * * * for the reason that they (the policies) were transferred in trust * * * in contemplation of, or intended to take effect in possession or enjoyment at or after his death within the meaning of Section 811(c) of the Internal Revenue Code". The Tax Court wholly ignored the former ground and sustained the latter. I think the former plainly good.

There was some ambiguity in the words "taken out by the decedent on his own life" as to whether they referred to the application for and issuance of the policy, or to the payment of the premiums. It was concluded that the premiums were the most substantial matter, and regulations to that effect were upheld in Lang v. Commissioner, 304 U.S. 264, 58 S.Ct. 880, 82 L.Ed. 1331, 118 A.L.R. 319, and confirmed by the amending Act of 1942. There is no such question here, for the deceased made all the applications, the policies were all issued to him, and he paid all the premiums, for the most part single premiums. At first the policies were payable to "Executors, administrators or assigns" of the decedent, but under a statute of Florida the proceeds were not "receivable by the executor" but belonged to his wife and children, though subject to other disposition by the insured during his life. If the policies had so continued till his death the first clause of Sect. 811(g) would not have applied, as we held in Webster v. Commissioner, 5 Cir., 120 F.2d 514. But the second clause of Sect. 811(g) as to such insurance "receivable by other beneficiaries" would have applied, as was recognized in a case under a similar State statute in Proutt's Estate

v. Commissioner, 6 Cir., 125 F.2d 591. But within two weeks after procuring and paying for the last policy the decedent assigned them all to trustees for his wife and children, reserving no right or power in himself. The Florida statute no longer has any application, for the policies were no longer payable to the insured's estate.

The effect of the assignments was to substitute the assignees as beneficiaries, and to vest in them the power and control over the insurance which the insured had before. See Bingham v. United States, 296 U.S. 211, at page 217, 56 S.Ct. 180, 80 L.Ed. 160. There was nothing about the trust itself to make it revocable or retain any interest in the trustor, so the assignments stand as absolute. Our question is, Do insurance policies taken out by the decedent on his own life under Sect. 811(g) cease to be such if they are assigned by way of gift to trustees for the beneficiaries?

The statute does not say so. To its clear words must be added a qualification, "provided the decedent did not assign them to his beneficiaries before dying". Now it appears from Treasury Decision 5032, issued Jan. 10, 1941, that until that date Regulation 80, Article 27, touching the provision under discussion, had added to the statutory words these: "if the decedent possessed at the time of his death any of the legal incidents of ownership". This important narrowing of the statute was, I believe, beyond the regulatory power of the Treasury Department. The precise question was so decided with reference to a provision of the tariff Acts in Morrill v. Jones, 106 U.S. 466, 1 S.Ct. 423, 27 L.Ed. 267, and Merritt v. Welsh, 104 U.S. 694, 26 L.Ed. 896. The facts that the regulation had stood for some time, that the statute had been reenacted, and that former decisions had to be overturned were held not to excuse the court from applying another provision of the Estate Tax law correctly, and from overruling the previous incorrect decisions. Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368. A regulation inconsistent with the statute never binds a court, though the Commissioner may feel bound not to attack it. The qualifying words of this

regulation evidently reflect an implication from the reasoning of the court in Chase Nat. Bank v. United States, 1928, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388, where it was discussed whether the estate tax on insurance taken out by the decedent on his own life was an unconstitutional direct tax, and held that it was not, but was an excise tax on the transfer of property, and valid in that case because the insured had the power to change the beneficiary. The implication drawn was a natural one, but not a decision that the tax would be invalid if no power to change the beneficiary or other similar power was retained. The Supreme Court has never held that. The plain legal truth is that the gift and estate taxes are all excise taxes on transfers of property and valid as such. The two taxes are interrelated, so that a transfer supposed at the time to be a gift and paying a tax as such, if it afterwards turns out for a good legal reason to be properly a transfer in contemplation of death or taking full effect at or because of death and so classified by the statutes as subject to the higher estate tax, the error is corrected and adjustment made by crediting what was previously paid as a gift tax. Int.Rev.Code, § 936, 26 U.S.C.A. Int.Rev.Code, § 936. This may be done since both taxes are excise taxes on a transfer of property. What transfers are to be put in each category is for Congress to say. There is nothing in the Constitution to prevent Congress from dealing with insurance by a decedent on his own life as a thing apart, as I think Sect. 811(g) does. One does not need to have "indicia of ownership" at his death in order to have transferred property includable in his estate. He has to own the interests mentioned in § 811(a). But under § 811(c) if a transfer, no matter how completely it divests his ownership, was "in contemplation of or intended to take effect in possession or enjoyment at or after his death", the value is includable for the estate tax. This is so because the statute says so. Now this decedent transferred about $150,000 in money to insurance companies for a larger benefit to his wife and children (under the Florida statute) to accrue to them in possession at his death. He then confirmed it by assignments which cut off all his powers. The assignments were a present gift of valuable rights such as the right to surrender the policies for cash, and were properly taxable as gifts on that idea; but if surrendered there would cease to be insurance and that would end the matter. They were not surrendered, and the insurance continued till the death of insured, so that what was then received was the proceeds of insurance, squarely within the words of the statute.

This statutory treatment of such insurance is logical and consistent with the words quoted from 811(c). Such insurance is an indirect transfer (whether assigned or not) of wealth from the estate to voluntary beneficiaries, and in its very nature in contemplation of death and to take full effect at death. Section 811(c) and Section 811(g) stand or fall together. If the one is unconstitutional as against a full divestiture of ownership, so is the other. In truth Congress could constitutionally exempt all such insurance, instead of only $40,000. It could also, as it did, include it in the estate without conditions.

In Bailey v. United States, 1939, 27 F.Supp. 617, 89 Ct.Cl. § 364, Court of Claims had policies made payable to decedent's wife under an agreement treated as an absolute assignment. It was stipulated that there was no special contemplation of death. The unanimous court said: "Life insurance is inherently testamentary in character. The payment of premiums and the insured's death are the necessary events giving rise to the full and complete possession and enjoyment of the face amount of the policies by the beneficiary. The acquisition of life-insurance policies on one's own life is a substitute for a testamentary disposition of property, and to allow an insured to avoid the estate tax upon his estate by making an assignment of policies taken out by him, and upon which he paid the premiums at a time when the statute required the inclusion of the proceeds of such policies in his gross estate, would be contrary to the clear language of the statute." 27 F.Supp. at page 621. This perfectly states the case.

But if the fact of special intent is to be tried at all, the conclusion of the Tax Court is amply sustainable. The two first policies are apparently the ordinary type of family insurance. The last four, constituting the great bulk of the insurance, were obtained in a single month, with a cash outlay of about $150,000. There was more of an investment than an insurance purpose. The trust created to receive the assignments of the policies had the same trustees as were named executors in the will executed four years later, and the trusts of the insurance and in the will touching other property had the same beneficiaries and similar powers. The will had a clause revoking former wills. The Tax Court remarks that a wealthy and experienced business man would hardly wait till he was sixty-eight years old to make his first will. It inferred that another similar will had probably been executed about the time of creating the insurance trust, or that in any event the trust was a part of a testamentary plan, and thus made in contemplation of death. This fact conclusion I think is warranted.

Rehearing denied; SIBLEY, Circuit Judge, dissenting.