## SLOAN'S ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 212, Docket 20857.

Circuit Court of Appeals, Second Circuit.

June 1, 1948.

Nixon, Hargrave, Middleton & Devans, of Rochester, N. Y. (Scott Stewart, Jr., and Thomas C. Taylor, both of Rochester, N. Y., of counsel), for petitioners.

Theron Lamar Caudle, Asst. Atty. Gen., and Sewall Key, George A. Stinson, and L. W. Post, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

The petitioners are the executors of the estate of William E. Sloan who died on August 29, 1942. Eleven years before his death the decedent had conveyed to a corporate trustee twelve policies of insurance upon his life. The Tax Court ruled that the transfer in trust was made in contemplation of death, and, by virtue of section 811(c) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 811(c), was includible in the decedent's gross estate. The petition before us presents for decision the correctness of this ruling, or, in the alternative, the question whether the proceeds of the policies are includible in the gross estate under section 811(g) of the Code.

The facts were stipulated. On August 27, 1931, William E. Sloan entered into an agreement with a trust company, as trustee, and made payable to it, policies of insurance upon his life having a total face value of $114,589. The trust was irrevocable, the grantor reserving no incidents of ownership in the policies and no power to alter or amend the trust. The trustee was to collect the proceeds of the policies upon the death of the grantor and was to hold and dispose of them upon the terms set forth in the trust agreement. As expressly stated in paragraph Second of the trust agreement, quoted in the margin,[1] the purpose of the insurance trust was to aid the grantor's executors and testamentary trustees in administering his estate. Paragraph Third directed the trustee of the insurance trust to hold the proceeds of the policies "throughout the term of the trust for the purposes hereinabove specified" and to pay any net income to the grantor's two sons

---

[1] "SECOND: The Grantor owns various parcels of real property of substantial value, the taxes and carrying charges with respect to which are large. In order that the Executors of and Trustees under the Last Will and Testament of the Grantor may not be required to sacrifice any of such real property nor any other assets of the Grantor's estate in order to raise funds with which to carry such real property, and for the purpose also of providing the Grantor's Executors and Trustees with funds for the payment of Inheritance Taxes and the expenses of administration, if necessary, the Grantor is now creating this trust.

"The term of this trust shall be not longer than the lifetimes of the Grantor's sons, William E. Sloan, Jr. and Samuel Sloan. It shall terminate forthwith (prior to the death of said sons) upon notification in writing received by the Trustee from either the Executors of or the Trustees under the Grantor's Last Will and Testament that said Executors or Trustees, as the case may be, will have no further need to borrow any funds from the Trustee hereunder for the purposes hereinbefore expressed.

"The trust fund shall be kept largely in cash deposited at rates of interest prevailing for similar accounts in the City of Rochester during such term and/

and their descendants per stirpes. Upon termination of the trust, the corpus was to be paid to the same beneficiaries, or, if both sons had died, leaving no descendants, the property was to go to a charity, the Community Chest of Rochester, N. Y. The grantor died August 29, 1942. He was survived by both sons, and they, with the Lincoln Rochester Trust Company, were named executors and trustees under his will, which was executed July 14, 1942.[2] Under the trust established in the will, the two sons took equal life interests in the corpus of the testamentary trust, with certain provisions (not now material) permitting payment to them out of the corpus.

Upon the grantor's death, the trustee of the insurance trust collected $116,854.64 as proceeds of the insurance policies. No loan of any part of this trust fund was made to the executors of the grantor's estate, but the insurance trustee, at the request of the executors, purchased from the estate 780 shares of Eastman Kodak Company stock at a price of $113,490. Three days later, on December 22, 1942, the trust was terminated, as provided in paragraph Second of the trust agreement,[3] upon notification by the executors that they had no need to borrow from the trustee for the purposes set forth in the trust agreement. Thereupon the trustee distributed the 780 shares of Eastman Kodak stock in kind to the grantor's two sons. The trustee retained $3,509.99 for payment of its commissions and other miscellaneous expenses. The in-

surance trust was finally closed out on September 28, 1943.

The decedent paid all the premiums of the policies in the insurance trust. In the decedent's estate tax return, the executors reported as part of the gross taxable estate the sum of $8,505.77, representing that portion of the total proceeds of $116,854.64 attributable to the premiums paid by the decedent after January 10, 1941; the balance of the proceeds were included in the gross estate by the Commissioner, resulting in the deficiency complained of.[4]

Section 811(c) brings into the estate transfers made by the decedent (1) "in contemplation of death" or (2) "intended to take effect in possession or enjoyment at or after his death." The respondent's brief disclaims reliance on clause (2) because Treasury Regulations 105, section 81.17, as amended, make the clause inapplicable, since the trust property would go to the Rochester Community Chest if both sons should die before the grantor and leave no descendants.

Turning to clause (1), we are met with the petitioners' contention that this clause cannot be considered, because at the hearing before the Tax Court counsel for the Commissioner disclaimed taking the position that the transfer in trust was made in contemplation of death and asserted only, with respect to section 811(c), that the transfer was one to take effect at or after the decedent's death. In its opinion the

---

or in securities of a liquid character which may be expeditiously disposed of for cash without unreasonable sacrifice or delay.

"The Trustee shall be bound to loan to the Executors or Trustees of the Grantor's Will such sums as they may from time to time in writing request (without collateral security or interest, if so requested) and shall not be required to inquire into the application of the moneys so borrowed nor the necessity for or advisability of such borrowings. The Trustee shall not be required to sue for or enforce collection of said loans, or the interest thereon, and shall not be responsible for any failure to collect any part of such indebtedness or interest unless so requested in writing by those entitled to the corpus of this trust.

"If so requested by the Executors or Trustees of the Grantor's estate, in writing, the Trustee shall purchase for cash any securities of the estate which the Executors or Trustees may desire to convert into money at their market value."

[2] One of the sons died during the period of administration, and no successor as executor and testamentary trustee has been appointed.

[3] Quoted in note 1, supra.

[4] Pursuant to section 811(g) of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 811(g), the decedent's estate was allowed an exemption of $40,000 with respect to the proceeds of insurance policies other than those held under the trust agreement of August 27, 1931.

Tax Court considered this contention, ruled that the statements made by counsel had not so limited the issue, and based its decision in part on the holding that the transfer was made in contemplation of death. We need not determine the correctness of the Tax Court's ruling that counsel's remarks did not disclaim reliance on clause (1) of section 811(c). If the petitioners were misled by counsel's remarks as to the issues and were thereby prevented from putting in evidence relevant to whether the transfer was made in contemplation of death, they should have applied to the Tax Court to reopen the hearing. They did not do so. Nor do they now ask us to remand the cause to let them mend their case, or suggest that they have any evidence additional to what is already in the record that could better it. To quote from their brief, "it is the petitioners' contention that the effect of counsel's disclaimer was permanently to remove from the case the issue of contemplation of death." Stated baldly, the contention is that although the record before the Tax Court showed that the petitioners owed a tax of $51,000, the counsel's disclaimer of reliance on a particular legal theory was a final and conclusive surrender of the government's right to the tax. Naturally no authority supporting so extreme a position has been cited. Compare Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 35, 85 L.Ed. 397; Helvering v. Gowran, 302 U.S. 238, 246, 247, 58 S.Ct. 154, 82 L.Ed. 1337. We pass therefore to the merits.

At least since United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 450, 75 L.Ed. 867, it has been recognized that the test whether a transfer was made in "contemplation of death" within the meaning of section 811(c) is to be found in the grantor's motive. The transfer may be motivated "in contemplation of death" even though the grantor did not think death imminent, for the dominant purpose of the statute "is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax." United States v. Wells, supra 283 U.S. at page 117, 51 S.Ct. at page 451; Allen v. Trust Co., 326 U.S. 630, 635, 66 S.Ct. 389, 90 L.Ed. 367. In the case at bar the testamentary character of the transfer is apparent on the face of the trust instrument. Until the insured's death neither the trustee nor the primary beneficiaries of the trust, the insured's sons, could receive any benefits from the transfer, for the trustee was not authorized to obtain the cash surrender value of the policies or to borrow on them, except to pay premiums; he was merely to collect the policies when they matured on the insured's death, and the proceeds then received were to constitute the trust fund. This was to be lent to the insured's executors, if they so requested, without security or interest, and without obligation on the trustee to enforce collection of the loans unless requested by the beneficiaries of the trust. The trust agreement also required the trustee to purchase from the insured's executors, at their request, any securities which they might wish to convert into cash at market value. And the executors could terminate the trust by giving the trustee notice that they had no further need to borrow. The obvious purpose, and the only purpose apparent, in creating the trust, was to make sure that there should be on hand after the insured's death, ready cash available to the executors for redeeming the decedent's real property from taxes and carrying charges and for paying estate taxes and expenses of administration without the necessity of making a forced sale of the estate's securities in order to obtain cash for such purposes. Such an arrangement seems to us a testamentary disposition quite as plainly as were the transfers involved in our decisions in First Trust & Deposit Co. v. Shaughnessy, 2 Cir., 134 F.2d 940, cert. den. 320 U.S. 744, 64 S.Ct. 46, 88 L.Ed. 442; Vanderlip v. Commissioner, 2 Cir., 155 F.2d 152, cert. den. 329 U.S. 728, 67 S.Ct. 83, 91 L.Ed. 630; Slifka v. Johnson, 2 Cir., 161 F.2d 467, cert. den. 332 U.S. 758, 68 S.Ct. 57.

Order affirmed.