OPINION. Bruce, Judge: With respect to.the inclusion in gross estate of the value of the inter vivos trust created by the decedent, respondent’s primary contention is that it falls within section 811 (c) (1) (A), Internal Revenue Code,[2] as a transfer in contemplation of death. The question as to whether the transfer is of such character is one of fact, and our finding that the transfer was not in contemplation of death answers respondent’s contention. We think our conclusion upon this question is amply supported by the record. The trust in question was one created by the decedent more than 15 years prior to his death and at a time when he was in good health and actively carrying on his business. The circumstances attending the creation of the trust are fully set forth in our Findings of Fact. Its creation was solicited by the trustee who wished trust business. On being approached, the decedent advised the representative of the trust- company that he did desire to create a trust of certain of his property for the benefit of his wife for the purpose of guaranteeing her support. The decedent was disturbed about the conditions existing, as the country was at the time in the depths of a severe financial depression. He stated to the representative of the bank that he wished a trust so conditioned that the property conveyed would be beyond his power to use or encumber and no longer be liable for risks incident to his business. The trust instrument as drawn by the trust officer was to meet this definite announced purpose. We see in this a dominant purpose connected with life and not with death. It is true that the corpus of the trust consisted of insurance policies upon decedent’s life, and it is realized that when property of this character is transferred in trust there must necessarily be in contemplation to some extent the fact of the death of the trustor and the conditions which will then be met, and it may well be that an insurance trust will by reason of the character of the trust be held as one made in contemplation of death in the absence of evidence establishing another dominant motive. Estate of Paul Garrett, 8 T. C. 492, affirmed in part, 180 F. 2d 955. In that case Judge Learned Hand, speaking for a majority of the court, said: A conveyance of property which the grantee can by no chance use until the grantor's death, will so commonly be in the main testamentary, that it is fair to infer that that was its preponderating, if not indeed its only, purpose, unless there he affirmative evidence of other contributory motives. * * * [Emphasis supplied.] Here we think it has been affirmatively established by clear and convincing evidence that the decedent’s dominating motive and purpose in creating the trust was to provide security for his wife by placing the property conveyed in trust beyond risk through hazards of his business. This is a motive connected with life, not death. In this connection see Estate of Wilbur B. Ruthrauff, 9 T. C. 418, and Estate of Verne C. Hunt, 14 T. C. 1182. Respondent further contends that the trust corpus is includible under section 811 (c) (1) (B), Internal Revenue Code, on the ground that decedent retained the right to the income therefrom for life. An examination of the trust instrument shows that it is specifically made irrevocable and no reversion or right to income is retained under its terms. Respondent, however, argues that assignment of the policies in question was never completed by the decedent. It supports this argument by calling attention to the fact that only 1 of the 11 policies of insurance was formally assigned to the trustee by a specific instrument of assignment. In the case of the other 10 policies the trustee was substituted as beneficiary without power of revocation and the policies were physically delivered to the trustee. He also points to the fact that 1 endowment policy upon its maturity was withdrawn from the trust by the decedent with the permission of the trustee and converted to an annuity contract from which the decedent drew income until the time of his death and the proceeds of which were paid to his estate; and that in the case of 9 paid-up participating policies dividends were paid to and received by the decedent without objection on the part of the trustee. Upon the question as to whether there was in fact a complete assignment of the insurance policies by the decedent to the trustee, the answer is to be determined by the law of the State of California. Estate of Louis J. Dorson, 4 T. C. 463. The most recent decision in a California court appears to be that in Mahony v. Crocker, 58 C. A. 2d 196, 136 P. 2d 810. This was a decision by the California District Court of Appeals, with petition for a rehearing denied by the Supreme Court of California. In this case, as in the ease at bar, the decedent transferred in trust certain insurance policies on his life, the trustee being substituted as beneficiary and the policies physically delivered to such trustee. On these facts the court held that by the substitution as beneficiary under conveyance in trust the insured waived irrevocably his right to again change the beneficiary, and that this fact, coupled with the physical delivery to the trustee of the policies, constituted an assignment as effective as if it had been carried into effect by a formal instrument of assignment. Eespondent cited no California decision in conflict with the Mahony case. In Anna Rosenstock, 41 B. T. A. 635, we held that there was an irrevocable assignment under New York law where the insured named his wife beneficiary of certain policies of insurance and delivered them to her without executing a formal instrument of assignment. See also Louis J. Dorson, supra. We accordingly hold that there was an irrevocable assignment by the decedent of the 11 policies here in question fo the trustee. This brings us to the question of the withdrawal of one of the insurance policies by the trustee from the trust estate and the receipt by him of certain dividends on participating policies paid by the insurance companies and dividends on stock held by the trustee. Eespond-ent argues that these conditions definitely establish that the intent under the trust instrument was to retain the income from the trust estate to the decedent for life, and that during this period the trustee was intended to be no more than a depositary of the policies. It is difficult to reconcile this argument with the specific provision of the trust instrument making it irrevocable and providing that: The said insurance policies, together with any additional policies which may hereafter be made payable to the Trustee, and the proceeds thereof received by the Trustee shall constitute the Trust Estate and shall be held by the Trustee in trust subject to all of the provisions of this agreement. The Trustee shall collect, receive and receipt for all income, gains, and profits from and upon the property held in trust and shall pay therefrom or from the principal of the Trust Estate, if necessary, any taxes, fees or expenses reasonably paid or incurred by the Trustee in the administration of the Trust Estate. As stated in our Findings of Fact, subsequent to the creation of the trust the trustee was precluded by statute from deriving the income which it had contemplated to be received as compensation for acting as trustee, and the express terms of the trust provided for the payment of no other compensation. The mere fact that the trustee was denied compensation for the exercise of its duties and responsibilities as trustee did not relieve it from such duties and responsibilities. It appears clear from the testimony of the trust officer of the corporate trustee that it was anxious to avoid the receipt of income and to avoid any other condition which would require performance of duty on its part for which it could not charge a fee. It consequently welcomed any arrangements by which it could avoid the receipt of income and the necessity to invest and account for the same. In fact, with respect to its permission for the withdrawal of one paid-up endowment policy from the corpus, it is shown to have acted squarely against the advice of its counsel. The disregard by the trustee of its clear duties as such is illustrated by its action or lack of action with respect to corporate stock which it permitted the decedent to substitute for cash paid it upon maturity of one policy. In this case it did secure from the decedent and all of the beneficiaries of the trust a joint request to permit such substitution, but the stock delivered to it was endorsed in blank, was unquestionably its property as trustee with all the rights incident to such ownership, and yet it took no steps to present stock certificates for transfer on the corporate books to its name but permitted them to stand untransferred and the dividends in consequence to be paid direct to the decedent who was no longer the owner. The trustee seems to have recognized the impropriety of such action and attempted to secure an agreement from the decedent which would permit it to charge a fee which was precluded under the terms of the trust. It stated that if such agreement was made it would then transfer the stock on the corporate books and charge the agreed fees and expenses against the income. No agreement being secured to this suggestion, the trustee merely “let sleeping dogs lie,” and allowed the dividend income for which it was in fact responsible to be paid to decedent. We can see as a result of these conditions nothing more than an utter disregard by the trustee of its duties and responsibilities as such. We see no ground to assume on these facts that it was not intended that the trustee assume such responsibility but that the decedent, as transferor, should receive during his lifetime such income as was realized by the trust estate. We accordingly see no ground for the application of section 811 (c) (1) (B), nor do we see any grounds for concluding that the decedent possessed at death any incidents of ownership to justify the application of section 811 (g) (2) (B). It is argued by respondent that the decedent exercised the right to take income from the trust corpus. It is unquestionably true that the decedent did take such income, but we fail to find a right on his part to do so. This result was not brought about through an exercise of a legal right on his part but directly as a result of a failure on the part of the trustee to exercise its responsibilities as such. In Estate of Louis J. Dorson, supra, the trustor, after an irrevocable assignment of the policies in trust, obtained and used for his own benefit some of the dividends paid thereon, and we held that such condition was immaterial to disturb the conclusion that the assignment was complete and that such dividends were in fact the property of the trust estate. We hold the corpus of the trust here involved not includible in decedent’s gross estate, and respondent’s action is reversed. In the administration of the estate of the decedent the probate court allowed the sum of $1,500 per month as an allowance from the estate for the support of the widow during the administration of the estate. Under such allowance the total sum of $80,000 was paid over a period of 20 months and approved by the court. Respondent, in determining-' the deficiency, reduced this allowance to $22,500. Decedent left a considerable estate and the allowance granted by the court was no more than necessary to support the surviving spouse in the same manner she was accustomed to in the past. Her expenditures for living expenses during the period in question have been shown to be in excess of the amount allowed. There is no evidence that the administration of the estate was prolonged for an unreasonable time in order to secure an excessive allowance. Under such circumstances we have concluded that the allowance was reasonable, and respondent’s action in reducing this item is reversed. The issue raised upon the inclusion in decedent’s estate of the total value of a residence and the total amount of a bank deposit, both held by the decedent and his surviving spouse in joint tenancy at the time of his death, requires little discussion. Section 811 (e) (1) and (2), as in effect at the time of decedent’s death, required that there be included, in the gross estate of a decedent any interest therein held as a joint tenant or as a community interest with his surviving spouse except as to any portion of such property shown to have originally belonged to such other person or to have represented compensation for personal services actually rendered by the surviving spouse or derived originally from such compensation or separate property of such spouse. The record is devoid of any evidence as to any separate property or earnings by the decedent’s surviving spouse. Respondent is sustained upon his inclusion in the gross estate of the entire values of these two items of property. Steen v. United States, 195 F. 2d 379, certiorari denied 344 U. S. 822; Joseph H. Heidt, 8 T. C. 969, affd. 170 F. 2d 1021. The decree of the probate court settling the first and final account of the executors and the final distribution of the estate allowed a payment by the estate of $130 to the executors for certain incidental expenditures in connection with the transfer of assets. Respondent points to the fact that there is no itemized statement of just how this amount was expended. The estate was large and this expenditure quite small. It appears to have been made in connection with stock transfers, certification of documents, and things of this character. It was allowed by the court and the presumption is that such allowance was upon a showing that this amount was necessary to be spent in the closing of the estate. Under the circumstances we see no reason for its disallowance and respondent’s action is reversed. The final issue is upon the disallowance of $163. This appears to represent a closing fee of $150 paid the trustee of the trust here involved and $13 paid by the trustee in connection with the closing of its trust account and reimbursed to it by the executors. These payments were ones with respect to the trust estate which is not a part of decedent’s estate and there are no facts disclosed which indicate in any way that the items in question represented an indebtedness of the estate. Respondent’s action in disallowing these payments is sustained. Several subordinate issues raised by the pleadings have been settled by stipulation which will be carried into effect under a recomputation of the deficiency. Decisions will he entered wnder Bule SO. SEC. 81.1. GROSS ESTATE. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property. * * * * * * * * * * (c) Transfers in Contemplation of. or Taking Effect at. Death.— (1) General rule. — To the extent of any Interest therein of which the decedent has at any time made a transfer * * * (A) in contemplation of his death ; * * * (B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) * * * the right to the income from, the property, * * * (e) Joint and Community Interests.— (1) Joint interests. — To the extent of the interest therein held as Joint tenants by the decedent and any other person, * * * except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money’s worth ; * * * (2) Community interests. — To the extent of the interest therein held as community property by the decedent and surviving spouse * * * except such part thereof as may be shown to have been received as compensation for personal services actually rendered by the surviving spouse or derived originally from such compensation or from separate property of the surviving spouse. * * * * * * * * * * (g) Proceeds of Life Insurance.— (2) Receivable by other beneficiaries. — To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent * * * (B) with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or In conjunction with any other person. * * *