ESTATE OF CHARLES I. AARON, DECEASED, MARCUS AARON, MARCUS LESTER AARON AND FANNIE H. AARON FRIEDMAN, EXECUTORS, ET AL., PETITIONERS,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 38348–38352.  Promulgated December 22, 1953.

*Thomas J. McManus, Esq.*, and *Carl E. Glock, Jr., Esq.*, for the petitioners.

*Roy E. Graham, Esq.*, for the respondent.

[1] Proceedings of the following petitioners are consolidated herewith: Marcus Lester Aaron, Trustee for Maxine Goldmark Aaron, Jr., Trustee and Transferee, Docket No. 38349; Marcus Lester Aaron, Trustee for Jean Louise Friedman, Trustee and Transferee, Docket No. 38350; Marcus Lester Aaron, Trustee for Ruth Frances Friedman, Trustee and Transferee, Docket No. 38351; and Marcus Lester Aaron, Trustee for Marcus Aaron II, Trustee and Transferee, Docket No. 38352.

378

380

OPINION.

MURDOCK, *Judge:* The Commissioner does not argue that the condition of the health of the decedent in any way prompted the 1931 transfers, and clearly it did not. The justification for the determination that those transfers were made in contemplation of death must be found in the use and the terms of the trusts, the nature and possibilities of the property transferred, and the intent of the settlor shown by that and all other evidence in the record. The decedent was keen and intelligent. He knew what could be expected of the trusts. He knew that the income from the securities which the trusts would hold would not be sufficient to pay the premiums on the policies of insurance. He knew that he was not the person on whom the beneficiaries would naturally depend for support during their lives or for their inheritances since the parents and grandparents of the beneficiaries needed no help from him to support, maintain, and educate the four children but were well-to-do and able to provide abundantly for those children, then ranging in age from one to four. He knew and intended that the trusts would not provide any economic or other benefits for the children until his death would bring into the trusts the proceeds of the insurance on his life and relieve the trusts of the expense of the premiums. Then, for the first time, would the trusts be holding unrestricted property which would produce income for the beneficiaries and become theirs at the termination of the trusts. That was what the decedent intended and that was the way in which the transfers were made by him in contemplation of his death.

The petitioners argue that a funded life insurance trust is not ipso facto a transfer in contemplation of death and can be shown by other evidence to have been made for motives connected with life, citing *Cronin's Estate* v. *Commissioner*, 164 F. 2d 561, reversing 7 T. C. 1403; *Flick's Estate* v. *Commissioner*, 166 F. 2d 733; *Estate of Paul Garrett*, 8 T. C. 492, affirmed on this point 180 F. 2d 955; *Estate of Wilbur B. Ruthrauff*, 9 T. C. 418; *Estate of Verne C. Hunt*, 14 T. C. 1182; *Estate of Frank W. Thacher*, 20 T. C. 474; *Estate of Lillie G. Hutchinson*, 20 T. C. 749; *Estate of Louis Richards*, 20 T. C. 904. The decedent never gave any indication that these transfers were made to protect the beneficiaries from possible adverse changes in his fortune.

Nor were the transfers intended to aid the beneficiaries in their businesses, to give them experience in handling money, or to give them pleasure, while the decedent was still alive. Most of the cited cases are distinguishable because of the absence here of motives oi those kinds.

It does not appear that the decedent made the transfers to relieve himself of the expense of paying the premiums. Income and gift tax saving were no more important as motives to the decedent than estate tax saving. Gift tax saving could scarcely account for more than the timing of the transfers. The petitioners point to an alleged established course of giving and use of trusts to protect against youthful indiscretion, but the particulars in which these transfers differ from the others are those upon which the Commissioner relies to show contemplation of death. A family tradition and a moral obligation are mentioned, but the argument is not helpful. It is said that the decedent's primary motives for the transfers were generosity and affection. That is probably true of all or most gifts whether in contemplation of death or not. The petitioners argue that the decedent regarded life insurance merely as an investment and, therefore, these transfers were like any transfers of securities in trust where income was to be accumulated for a period. But these trusts were unlike other trusts in which current income accumulates for the beneficiaries during the grantor's life. The similarity begins only when the grantor dies.

The decedent could have preserved all of the advantages which he perceived in life insurance and obtained all of the benefits suggested had he never made the transfers. All he had to do was to retain the policies and the bonds so that the proceeds would become a part of his residuary estate which he left to his grandnieces and grandnephews. The decedent knew this. Those advantages and benefits were not the kind of important motives for the transfers which would show that the transfers were not in contemplation of death. The transfers were like bequests. His dominant motive was to have the gifts ripen at and by reason of his death. No motive associated with life emerges to overcome the determination and evidence of the Commissioner that the transfers were made in contemplation of death. *Estate of Paul Garrett, supra; Thomas v. Graham,* 158 F. 2d 561; *Sloan's Estate v. Commissioner,* 168 F. 2d 470; *Estate of Frank A. Vanderlip,* 3 T. C. 358; affd. 155 F. 2d 152, certiorari denied 329 U. S. 728.

Transferee liability and the matter of administration expenses are not contested.

*Decisions will be entered under Rule 50.*