### SMITH v. DONNELLY, Collector of Internal Revenue, et al.

#### Civil Action No. 414.

District Court, E. D. Louisiana, New Orleans Division.

April 6, 1946.

Walter B. Hamlin, of New Orleans, La., for plaintiff.

Herbert W. Christenberry, U. S. Atty., and Richard B. Montgomery, Jr., both of New Orleans, La., for New York Life Ins. Co. and State Life Ins. Co.

Milton W. Mangus, of Indianapolis, Ind., for State Life Ins. Co.

John May and Henry & Kelleher, all of New Orleans, La., for Travelers Ins. Co.

Harry P. Gamble, of New Orleans, La., for Guaranty Income Life Ins. Co. of Baton Rouge.

BORAH, District Judge.

In this action plaintiff seeks to prevent the United States from seizing the cash surrender value of eighteen insurance policies taken out by James Monroe Smith, her husband, on his life, and of three policies taken out by her on her life. The relief asked is that warrants of distraint, seizure, levy and demand issued by the United States Collector of Internal Revenue at New Orleans, Louisiana, be quashed and vacated.

416

The Collector, as defendant, has by way of answer and cross-claim set up the interest of the United States in respect of the policies, this interest being based on assessments of taxes against Smith and his wife. At the request of the Collector, Smith was made a third party defendant.

The United States has intervened and has set up its claim for the assessed taxes against the Smiths, and has objected to the authority of the court to issue an injunction as being contrary to the provisions of 26 U.S.C.A. Int.Rev.Code, § 3653.

In its cross claim the United States is asserting a lien upon all property and rights to property of the Smiths by virtue of the assessments, and particularly upon whatever property rights exist as regards either of them in the twenty-one insurance policies referred to above. The United States has prayed for the foreclosure of its lien as concerns the property rights in those policies.

To summarize each of the twenty-one insurance policies would serve no useful purpose. In the Findings of Fact that follow, the pertinent provisions common to most of the policies will be given, and the respects in which the others differ will also be set forth.

The facts were stipulated. In so far as necessary to state, they are as follows:

### Findings of Fact

1. Between the years 1910 and 1936, inclusive, James Monroe Smith, hereinafter referred to as Smith, took out eighteen insurance policies on his own life.

2. Seventeen of the aforesaid policies, either in their original provisions or in subsequent changes, name the plaintiff as the beneficiary, the right to change the beneficiary being reserved to the insured in each policy. The remaining policy, No. 7757, issued by the Guaranty Income Life Insurance Company, which named Marjorie Lee Smith, daughter of the insured, as beneficiary, lapsed for non-payment of annual premium and was placed automatically on extended term insurance, which expired on December 28, 1945.

3. All but two of Smith's eighteen policies contain assignments to the plaintiff of all his rights in the sixteen policies, including the right to change the beneficiary.

4. Of the remaining two policies, one, No. 595–A, issued by the Guaranty Income Life Insurance Company, contains an indorsement reading in part as follows:

"In accordance with the Surrender Value Option 'b' elected by the Insured and Beneficiary effective February 12, 1941, this policy is hereby amended, and the face amount reduced to ($3,111.00) Three Thousand One Hundred Eleven Dollars, purchased by the net cash value on the effective date hereof, and premium payments are hereby discontinued and the indebtedness at the effective date hereof has been paid from said policy value and the evidence of such indebtedness cancelled.

"The owner hereof may exercise the rights and privileges hereof including the right to Cash Loans, Cash Surrender Value, Settlement Options, and Change of Beneficiary; but the Provisions for Premium Payment, extended Term Insurance, Profit-Sharing Endowment Options, Additional Options of Paid Up Insurance, and Pure Endowment Options do not apply hereto and are hereby no longer in effect."

5. The remaining policy is the one referred to in Finding No. 2, as having expired.

6. Three insurance policies were taken by the plaintiff on her life, on March 4, 1940, each naming James M. Smith, Jr., as the beneficiary, and reserving to the insured the right to change the beneficiary. The plaintiff has never exercised that right.

7. On February 13, 1940, the Commissioner of Internal Revenue made assessments of taxes against Smith, adding interest and penalties, for the years 1936, 1937 and 1938, totaling $315,409.13. At the same time he made assessments against the plaintiff for unpaid income taxes, interest and penalties for the same years, totaling the same amount.

8. The list upon which the assessments aggregating the sums aforesaid were entered, was certified to the then Collector of Internal Revenue for the District of Louisiana on or about February 13, 1940. Immediately upon receipt of the list, on February 15, 1940, the then Collector gave notice to the parties assessed respectively, and made demand upon each of them for the assessments applying.

9. Notwithstanding such notice and demand, neither the sums assessed nor any part thereof have been paid, and for the total amount assessed, the United States claims a lien pursuant to 26 U.S.C.A. Int.

Rev.Code, §§ 3670, 3671 and 3672 against all property and rights to property belonging to the parties assessed or either of them.

10. On or about February 15, 1940, the then Collector of Internal Revenue for the District of Louisiana filed notice of tax liens for the taxes assessed and listed to him as aforesaid, or some part thereof, with the Clerk of Court, Parish of East Baton Rouge, Baton Rouge, Louisiana; with the Clerk of the United States District Court for the Eastern District of Louisiana, at New Orleans, Louisiana; with the Clerk of Court, Parish of Lafayette, Lafayette, Louisiana; and with the Clerk of the United States District Court for the Western District of Louisiana, at Shreveport, Louisiana, as follows:

In the sum of $16,554.67 for the 1936 assessment against Smith and the plaintiff, jointly and severally; in the sum totaling $149,444.11 for the 1937 and 1938 assessments against Smith; in the sum totaling $149,410.35 for the 1937 and 1938 assessments against the plaintiff.

11. On October 25, 1940, the then Collector of Internal Revenue for the District of Louisiana issued and served upon each of the insurance companies that had issued the policies in suit a notice of levy upon all property, rights to property, moneys, credits and/or bank deposits in the possession of the said companies or any or either of them, belonging to Smith and/or the plaintiff.

12. Neither C. A. Donnelly, Collector of Internal Revenue for the District of Louisiana, nor any of his predecessors in office who have from time to time appeared as defendants herein, have any interest in this case except as officials of the United States of America, and any and all rights that they have or have claimed herein are subject to the rights of the United States as claimed herein.

### Discussion

The plaintiff contends (1) that the paid-up values of the insurance policies became part of her separate estate, by donation from her husband, and that the claim for taxes by the United States against her husband and herself is a debt of the husband, as head of the community of acquets or gains, and not of the plaintiff individually; and (2) that,. under Act 88 of 1916, Act 95 of 1934, and Act 155 of 1934, of the State of Louisiana, the proceeds, avails, or dividends of all life insurance policies are exempt from all liability for any debt, except in certain cases not applicable here.

These two grounds will be considered seriatim.

The plaintiff and her husband, Smith, the third-party defendant, both contend that the present value of each of the insurance policies belongs to the plaintiff. We are inclined to agree with this view, save as to the policies referred to in Findings Nos. 2 and 4. The policy mentioned in Finding No. 2, has, as stated, expired, and therefore need not be considered. The endorsement on the policy referred to in Finding No. 4 is not susceptible of the construction for which plaintiff contends. It is not an assignment and the insured specifically reserved the right to change the beneficiary. In consequence the insured retained a property interest in the policy, including the right of surrender for the cash value thereof. Assuming, however, as plaintiff would have us do, that the paid-up value of each of the policies referred to in the findings belonged to the separate estate of the plaintiff, this court is of the opinion that the plaintiff's position is clearly untenable and at variance with the controlling authorities. The Supreme Court and the Circuit Court of Appeals for this Circuit have consistently held that each spouse is liable for one-half of the Federal income taxes relating to the community.

In Bender v. Pfaff, 282 U.S. 127, 132, 51 S.Ct. 64, 75 L.Ed. 252, the court held that, inasmuch as the wife in Louisiana has a present vested interest in community property equal to that of her husband, the spouses are entitled to file separate returns, each treating one-half of the community income as income of each of them as an individual. This case was cited with approval in Fernandez v. Wiener, 66 S.Ct. 178, 182, 90 L.Ed. ——, decided on December 10, 1945.

The Fifth Circuit Court of Appeals has interpreted the decision of Bender v. Pfaff to mean that in Louisiana each spouse is liable for one-half of the tax falling upon community property. In Saenger v. Commissioner, 5 Cir., 69 F.2d 633, the court said:

"Unlike in Earl's Case, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, husband and

wife here are joint, not separate, earners. Together they are the tree. They share its fruits and the burdens of that sharing. Bender v. Pfaff * * *."

Again citing Bender v. Pfaff, the same court, in Commissioner of Internal Revenue v. Hyman, 5 Cir., 135 F.2d 49, 50, said:

"* * * under Louisiana law every cent of income from that property 'fell into the community', vesting equally in the husband and the wife, and should be taxed accordingly—one half to the wife, one half to the husband."

In the light of the foregoing it is plain that since Mr. and Mrs. Smith are "co-owners of the income earned, they are co-payers of the tax on it." Saenger v. Commissioner, supra.

The second contention of plaintiff is likewise without merit, for it is well settled that state exemption laws do not protect property from the incidence of Federal taxation. Glass City Bank of Jeanette, Pa., v. United States, 66 S.Ct. 108, 110, 90 L.Ed. ——, and cases there cited.

The Fifth Circuit Court of Appeals, too, has held that the Federal government, in its collection of the public fisc, is not to be frustrated by any chance provisions of state law. In the recent case of United States v. Dallas Nat. Bank, 5 Cir., 152 F.2d 582, 585, the court said:

"We held in Shambaugh v. Scofield, 5 Cir., 132 F.2d 345, that the provision of the Texas Constitution exempting homesteads from forced sale did not operate to exempt a Texas homestead from a sale to satisfy a federal income tax lien. Having been enacted within the scope of the power delegated to the Federal Government, the Internal Revenue statutes are a part of the supreme law of the land. If they are in conflict with State law, constitutional or statutory, the latter must yield."

See also Cannon v. Nicholas, 10 Cir., 80 F.2d 934, 935; Kyle v. McGuirk, 3 Cir., 82 F.2d 212, 213; Kieferdorf v. Commissioner of Internal Revenue, 9 Cir., 142 F.2d 723, 725, 726, certiorari denied, 323 U.S. 733, 65 S.Ct. 69; Jones v. Kemp, 10 Cir., 144 F.2d 478, 480.

The United States having a lien on whatever property rights are represented by the insurance contracts which is superior to any rights claimed by the Smiths or defendant insurance companies, it follows that the government may by foreclosure effect the application of the property to the reduction of the tax obligation, and the court now states its conclusions.

## Conclusions of Law

1. The plaintiff's prayer that warrants of distraint, seizure, levy and demand issued by the United States Collector of Internal Revenue be stayed, quashed and vacated, should be denied.

2. The lien of the United States upon all property and rights to property of both James Monroe Smith and his wife, Thelma Ford Smith, by virtue of the tax assessments hereinbefore described, should be recognized as superior to any rights claimed by said Smiths, particularly as to whatever property rights exist as regards either of them in the policies of insurance referred to in the Findings of Fact.

3. The property and rights to property of the plaintiff and said Smith in the aforesaid life insurance policies are subject to the lien of the United States for the unpaid balance of the 1936, 1937 and 1938 income taxes and interest and penalties against plaintiff and her husband, Smith.

4. The prayer of the United States for the foreclosure of its lien as concerns the property and rights to property of the plaintiff and her husband Smith in the aforesaid policies of insurance should be granted.

5. The United States shall be entitled to a judgment for the taxes represented by said assessments, to be paid first out of the cash surrender values of the aforesaid policies.

6. After the sum representing the total cash surrender value of the said policies has been applied against the taxes assessed against the plaintiff and her husband Smith, the United States shall be entitled to judgment for such taxes as may remain due thereafter against the plaintiff and her husband.

7. The United States is entitled to a judgment decreeing that each of the defendant insurance companies, respectively, pay to the United States the value of the respective interests, property and rights to property of the Smiths in and to the aforesaid policies.

Judgment shall be held in abeyance for forty-five days, during which time the parties hereto have agreed to submit a computation showing the effect, in dollars and cents, of the decision rendered by this court.