## UNITED STATES v. C. C. CLARK, Inc.

### No. 11789.

Circuit Court of Appeals, Fifth Circuit.

Jan. 23, 1947.

Writ of Certiorari Denied May 5, 1947.

See 67 S.Ct. 1306.

SIBLEY, Circuit Judge, Dissenting.

———◆———

Arthur L. Jacobs, Sp. Asst. to Atty. Gen., and Chester L. Sumners, U. S. Atty., of Oxford, Miss., for appellant.

F. E. Hagler and Ed M. Lowrance, both of Memphis, Tenn., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This appeal involves income taxes for 1937 under the Revenue Act of 1936.[1] The essential facts, as stipulated by the parties and found by the trial court, are as follows:

In December, 1937, the taxpayer de-clared a dividend to its stockholders in the amount of $118,500, payable in its own notes out of undistributed profits. A few months thereafter, in early 1938, the tax-payer cancelled this dividend and declared as a substitute therefor a cash dividend of $88,500, which was paid. During the tax year in question, the sum of $30,000 was paid by taxpayer to two of its stockholders in payment of its notes held by them. In its return for 1937, the taxpayer took pro-per credit for the $88,500 dividend payment, but did not take credit for the $30,000 pay-ment under Section 26(c) (2) of the Act or under Section 27(a) thereof.

In December, 1939, taxpayer filed its claim for refund of surtaxes paid on un-distributed profits in the amount of $3,326.-11 alleged to have been overpaid in 1937 by reason of its failure to take credit for the $30,000 payment, above mentioned, un-der Section 26(c) (2) of the Act. Its claim was rejected by the Commissioner of Internal Revenue, and thereafter suit was instituted by the taxpayer against the United States. The result of that suit was the affirmance by this court of the judg-ment against the taxpayer.[2]

After the filing but before the determi-nation of that suit, the stockholders amen-ded their individual returns so as to report the $30,000 payment to them by the tax-payer herein, and they paid their individual taxes for 1937 on a basis of $118,500 paid to them by the taxpayer.

In January, 1941, the taxpayer filed its claim for refund of $3,337.28 of surtaxes on undistributed profits paid by it for the calender year 1937, basing its claim upon the assertion that the taxpayer had dis-tributed $118,500 in dividends to its stock-holders, who had been required to pay their individual income taxes on such amount, but that the taxpayer had been al-lowed a dividends-paid credit of only $88,-500, and that the taxpayer was entitled to the exact amount of dividends-paid credit which its individual stockholders were re-quired to pay taxes on as dividends. That claim is the suit herein, and is based on Section 27(a) of the Revenue Act of 1936.

[1] 49 Stat. 1648, 26 U.S.C.A. Int.Rev. Acts, pages 813–972.

[2] C. C. Clark, Inc., v. United States, 5 Cir., 126 F.2d 292.

■ The question for determination on this appeal is whether our decision in C. C. Clark, Inc., v. United States, 5 Cir., 126 F.2d 292, denying taxpayers recovery of an asserted overpayment of surtaxes for 1937 under Section 26(c) (2) of the Act is res judicata of the same taxpayer's suit for the recovery of an asserted overpayment of surtaxes for 1937 under Section 27(a) of the Act.

■ We think the doctrine of res judicata is applicable. Income-tax liability for any one year is a single cause of action. Each taxable year constitutes a separate cause of action, and in every suit for refund one of the questions presented is the determination of the amount by which the taxpayer has overpaid his taxes for the year involved.[3] This doctrine is based on a sound public policy, and its main purpose is to avoid useless litigation brought about by the splitting of actions.

The judgment appealed from is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

HUTCHESON, Circuit Judge (concurring).

My pulse quickens and I turn instinctively to rally to him when I hear the Old Lion roar, but I cannot come this time, for in Cleveland v. Higgins,[1] I am in taxpayer's blood stept in so far that returning were as tedious as go o'er.

Besides, as recently as November 22, 1946, did not the Old Lion, over the outraged cries of our brother, Waller, say with me, in Jeffries v. Commissioner, 5 Cir., 158 F.2d 225, 226, "Whether a transaction or result is taxable and what the tax is is not a matter to be determined in law upon considerations of general justice or equity. It is a matter of statutes and valid regulations, and what they mean".

As well settled as the law we applied in the Jeffries case is the law: That taxation goes by years and that for taxes overpaid in any one year, the taxpayer has not many causes of action but one. Equally well settled is it that: the cause of action for overpayment of taxes in any year cannot be split; and that a judgment in a suit for taxes overpaid in a particular year bars not only the claims actually asserted but those which could have been asserted there.

The refund claim of which the dissent makes so much is not the cause of action. It is but a procedural step in asserting it. There was never any impediment in the way of the taxpayer's claiming on the grounds he now sues on. Having pitched his prior suit on other grounds, he may not complain if he finds his recovery barred by the judgment in that suit.

Let the Old Lion roar and shake his shaggy mane for justice. I'll not follow him.

SIBLEY, Circuit Judge (dissenting).

I must concede that the cited cases support the majority decision, but the Supreme Court has not spoken on the precise point and I venture to express my opposing view.

That view is that it is an abuse of the principles of res judicata to say that the refusal of the Commissioner to entertain the present application for a refund timely made is justified on the ground that an application for refund on another ground and on directly opposite facts was refused previously, sued on and the United States won.

I will state the exact pertinent facts. This corporation, owned by six members of the Clark family, owed two of its stockholders notes for large sums, and in 1934 the directors made a resolution to pay $30,000 each year on them. In 1937 there were distributable profits of $118,500 and $30,000 thereof was set aside to be paid on the notes, and a dividend declared to the stockholders of the whole $118,500 of profits, represented by its notes. After the tax year and early in the next year the stockholders received in substitution cash

---

[3] Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293; International Curtis Marine Turbine Co., v. United States, 56 F.2d 708, 74 Ct.Cl. 132; Chicago Junction Rys., etc., v. United States, 10 F.Supp. 156, 80 Ct.Cl. 824. Cf. Guettel v. United States, 8 Cir., 98 F.2d 229, 118 A.L.R. 1060, certiorari denied 305 U. S. 603, 59 S.Ct. 64, 83 L.Ed. 383; Cleveland et al. v. Higgins, 2 Cir., 148 F.2d 722, certiorari denied 326 U.S. 722, 66 S. Ct. 27.

[1] 2 Cir., 148 F.2d 722.

amounting to $88,500 and surrendered the notes. The corporation's tax return showed as dividends paid only the cash payment, and claimed no dividends paid credit for the $30,000 in notes given and surrendered, nor for the $30,000 paid on its note indebtedness. A refund of taxes was later asked solely because a credit was due under Section 26(c) on the ground that the $30,000 of profits paid on the notes could not be distributed because of a contract within that section. The refund was refused and suit brought on June 20, 1940, the sole issue made in the pleadings being that a refund was due on the ground just stated. The court on October 17, 1940, held that the directors' resolution was not a contract which would excuse non-distribution of profits; and that alone was considered and adjudged in this court on appeal. C. C. Clark, Inc., v. United States, 5 Cir., 126 F.2d 292. Meanwhile the stockholders, except C. C. Clark, in their returns reported as income only their proportion of the $88,500 cash dividend. C. C. Clark reported his proportion of $118,500. On September 10, 1940, the contention was first made that a proportion of the $118,500 dividend in notes ought to be reported by them all, and on December 6, 1940, additional taxes were assessed and were collected from the stockholders on December 12, 1940. This was after the trial of the corporation's case in the district court. After the adverse decision by this court, but within the period for applying for refunds, the corporation, conceiving that if the entire $118,500 note dividend was a dividend paid so as to charge the stockholders, it was a credit of dividends paid for the corporation against its tax on undistributed profits under Section 27(a) and (d) of the Revenue Act of 1936, made another application for refund on these new facts and this different law. The Commissioner did not consider its merits but held he could not, because of the court judgment on the other claim. This suit followed.

It is probably true that the dividend in notes made during the tax year was the payment of a dividend for tax purposes, and not retractable during the next year, so that the additional tax on the stockholders successfully asserted by the Commissioner was according to law. It is just as true that a corresponding credit for dividends paid was owing to the corporation under Section 27(a) and (d). This was admitted in argument before us. The tax on the corporation so far as produced by the $30,000 under discussion was unlawfully collected, and ought under Internal Revenue Code Sect. 3770, 26 U.S.C.A. Int.Rev. Code, § 3770, to be refunded by the Commissioner. The authority to refund implies a duty. The language of Congress is broad and strong. He is "authorized to remit, refund, and pay back *all taxes* erroneously or illegally assessed or collected * * * all taxes that appear to be unjustly assessed or *excessive in amount, or in any manner wrongfully collected*." The application for refund here is timely, the excessive tax admittedly wrongfully assessed and collected, and Congress has put no strings on the Commissioner which interfere with his doing what is right.

The courts in the cited cases have. They say that because the taxpayer sued once before about this excessive tax, and did not then present this question, different both in fact and law from that which the court decided, he is cut off—is fined in effect some $3,337. I think this is morally and legally wrong for two reasons: First, there was a mistake as to the effectiveness of the attempt to recall the note dividend, brought to light and corrected in favor of the United States after the former trial, and it ought to be corrected as to all parties. The United States ought not to be blowing hot and cold as to whether this $30,000 was paid as a dividend in 1937. In such cases of inequity the strict rule of res judicata is not to be enforced in public litigation. White v. Adler, 289 N.Y. 34, 43 N.E.2d 798, and note thereto in 142 A.L.R. 905. Second, if the corporation had the duty of presenting all contentions at once, under the rule against splitting actions, in this case it could not. It had a right to sue on the refusal of its first claim for refund, but only on the grounds presented in that claim. Internal Revenue Code § 3772, 26 U.S.C.A. Int.Rev.Code, § 3772. Not even by amendment could any different ground be added without the consent of the United States. J. P. Stevens Engraving Co. v. United States, 5 Cir., 53 F.2d 1; Snead, Collector,

v. Elmore, 5 Cir., 59 F.2d 312; Real Estate Land Title & Trust Co. v. United States, 309 U.S. 13, 60 S.Ct. 371, 84 L.Ed. 542. No such consent existed. The court not only did not but could not consider and decide the issue now tendered. Counsel for the United States, knowing perhaps of the position about to be taken by the Commissioner as to the stockholders, refused any importation of an additional dividends paid credit issue, for the fifth ground of the written motion for judgment, which was sustained, is this: "5. The plaintiff is not entitled to claim dividends paid credit for the taxable year 1937 in excess of $88,500 in this proceeding for the reasons that no such claim was made in the complaint, and there were no such facts alleged in the complaint to support such claim, nor was *any such claim made in the claim for refund."*

Therefore the United States stands with $3,337 of the taxpayer's money which ought to be refunded, but which will not be because the proper ground was not presented to a court, although the court could not entertain it without the consent of the United States, which consent the United States would not give. The United States is claiming a $30,000 dividend was paid so as to get taxes from the stockholders, and refusing to admit it was paid in order to keep a tax from the corporation assessed because the $30,000 was not so paid. This is so wrong as to look dishonest. None of us judges would suffer ourselves to be put in that position, and we ought not to put our government there.

Why do we have to? Congress has not said we must. Cleveland v. Higgins, 2 Cir., 148 F.2d 722, follows Guettel v. United States, 5 Cir., 95 F.2d 229, 118 A.L.R. 1060, and the latter rests on the Court of Claims decision in Chicago Junction v. United States, 10 F.Supp. 156, 80 Ct.Cl. 824. The first case in the Court of Claims on the point was International Curtis Marine Turbine Co. v. United States, 56 F.2d 708, 74 Ct.Cl. 132, and in that I think the correct approach was taken. It was thought the second claim for refund would not be barred if it was different from the first which had been adjudged, for the very reason that the second could not have been presented in the former suit. But it was concluded that this saving difference did not exist. In the next case a successful struggle was made to deliver an unpresented credit from the harsh rule of res judicata. Cambridge Loan & Building Co. v. United States, 57 F.2d 936, 74 Ct.Cl. 500. The Supreme Court in Tait v. Western Maryland Ry. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405, said that the principles of res judicata are to be applied to tax litigation, but the actual application was *estoppel by judgment* against relitigating the very issue which had previously been fully heard. Against that there can be no good objection raised. And I think a judgment by the Tax Court ought to settle the taxes for the year as a whole, for that court has the power and the duty to "redetermine" the taxes, to entertain each and every debit and credit. Not so the district court, which can only (absent consent) consider the claim which has been presented to the Commissioner and by him rejected or ignored.

In a case like this the basic maxim of res judicata, Interest reipublicae ut sit finis litium ought not to be applied, but rather Fiat justitia, ruat coelum. It is more for the public good that the United States Government in its own courts should deal honorably with its taxpayers than that a few hours of court time should be saved. "The rule against splitting a cause of action is one made by judges to promote the public policy of the State. It should not be applied 'to frustrate the purpose of its laws or to thwart public policy.'" White v. Adler, supra [289 N.Y. 34, 43 N.E.2d 803]. "A plaintiff who is not authorized to join the claims cannot later be met with the defense that he split the cause of action." 1 C.J.S., Actions, § 102, page 1310; 1 Am. Jur., Actions, § 100. The district judge *ought to be sustained in this case.*