**UNITED STATES of America, Appellant,**

v.

**Lynne Marx GILMORE, formerly Lynne Marx Knauer, Appellee.**

**No. 15130.**

United States Court of Appeals Fifth Circuit.

May 4, 1955.

Rehearing Denied June 29, 1955.

Louise Foster, Ellis N. Slack, Sp. Asst. to Atty. Gen., H. Brian Holland, Asst. Atty. Gen., E. David Rosen, Asst. U. S. Atty., Miami, Fla., A. F. Prescott, George F. Lynch, Sp. Assts. to the Atty. Gen., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellant.

B. E. Hendricks, Hendricks & Hendricks, Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

RIVES, Circuit Judge.

The question to be decided is whether the appellee, widow of Francis A. Knauer, who was beneficiary of her husband's life insurance and also administratrix of his estate is liable for her deceased husband's unpaid federal income taxes when, as administratrix, she had exhausted the assets of the estate, other than life insurance, in payment of federal estate taxes prior to knowledge of liability for income tax. Two grounds are urged upon which it is claimed that the widow is so liable: (1) that, under 26 U.S.C.A. §§ 811(g)

(2),[1] 826(c),[2] and 827(b),[3] the proceeds of the life insurance were subject to being applied to payment of the estate taxes thereby leaving enough other estate for the payment of the income tax; (2) that the widow is liable as a transferee at least to the extent of the cash surrender value of the insurance.[4] For the reasons hereinafter assigned, we hold that liability exists upon the first ground.

Francis A. Knauer died on January 14, 1945. His widow was appointed administratrix of his estate on February 6, 1945. His estate other than insurance amounted to $7,954.65. At the time of his death, he held life insurance policies upon which he had paid the premiums and which then had a cash surrender value of $9,227.98. His widow was the designated beneficiary with the right retained by the insured to change the beneficiary. The insurance also inured to the widow by virtue of the Florida statutes.[5] The proceeds of insur-

1. "§ 811. *Gross estate*

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \*

"(g) *Proceeds of life insurance*

\* \* \* \* \*

"(2) *Receivable by other beneficiaries.* To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, or (B) with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. For the purposes of clause (A) of this paragraph, if the decedent transferred, by assignment or otherwise, a policy of insurance, the amount paid directly or indirectly by the decedent shall be reduced by an amount which bears the same ratio to the amount paid directly or indirectly by the decedent as the consideration in money or money's worth received by the decedent for the transfer bears to the value of the policy at the time of the transfer. For the purposes of clause (B) of this paragraph, the term 'incident of ownership' does not include a reversionary interest."

2. 26 U.S.C.A. § 826(c), enacted with minor changes in phraseology as Section 2206 of the 1954 Internal Revenue Code:

"*Liability of life insurance beneficiaries.* Unless the decedent directs otherwise in his will, if any part of the gross estate upon which tax has been paid consists of proceeds of policies of insurance upon the life of the decedent receivable by a beneficiary other than the executor, the executor shall be entitled to recover from such beneficiary such portion of the total tax paid as the proceeds of such policies bear to the sum of the net estate and the amount of the exemption allowed in computing the net estate, determined under section 935(c). If there is more than one such beneficiary the executor shall be entitled to recover from such beneficiaries in the same ratio. In the case of such proceeds receivable by the surviving spouse of the decedent for which a deduction is allowed under section 812(e) (the so-called 'marital deduction'), this subsection shall not apply to such proceeds except as to the amount thereof in excess of the aggregate amount of the marital deductions allowed under such subsection."

3. "§ 827. *Lien for tax*

\* \* \* \* \*

"(b) [As amended by Section 411(a) of the Revenue Act of 1942] *Liability of transferee, etc.* If the tax herein imposed is not paid when due, then the spouse, transferee, trustee, surviving tenant, person in possession of the property by reason of the exercise, non-exercise, or release of a power of appointment, or beneficiary, who receives, or has on the date of the decedent's death, property included in the gross estate under section 811(b), (c), (d), (e), (f), or (g), to the extent of the value, at the time of the decedent's death, of such property, shall be personally liable for such tax. \* \* \* "

4. See 26 U.S.C.A. § 311; Tyson v. Commissioner of Internal Revenue, 6 Cir., 212 F.2d 16; Rowen v. Commissioner of Internal Revenue, 2 Cir., 215 F.2d 641; United States v. New, 7 Cir., 217 F.2d 166.

5. 11 Florida Statutes Annotated:

"Title XIV—Homestead and Exemptions

ance in the amount of $90,838.31 were paid to or for the benefit of the widow. Estate taxes were paid in the amount of $11,201.01 before the widow knew of any liability for her deceased husband's unpaid income taxes. In paying such estate taxes, the assets of the estate, other than any claim on life insurance, were exhausted and the widow used in addition some personal assets. On December 19, 1947, the United States assessed deficiency assessments against the estate for deficiencies, in the income taxes due from the deceased for the year 1943 in the amount of $3,858.17, and for the year 1944 in the amount of $1,596.47. This suit is for the recovery of such deficiency assessments in income taxes of the deceased husband.

If the liabilities for both income taxes and estate tax had been known at the time of decedent's death, it could hardly be argued that the Government should be prevented from collecting decedent's income taxes merely because the administratrix chose to pay the estate tax first. A consideration of the legal significance of the sequence of events will demonstrate, we believe, that since such liabilities actually existed on the date of the decedent's death, and no superior rights intervened, it is not material that either or both of such liabilities were discovered later. In 1943 and 1944, Knauer, now deceased, received income from which his liability for income tax arose. Such liability ripened into indebtedness to the Government when Knauer filed his returns. It is immaterial that the deficiencies were not discovered and assessed by the Government until 1947, for, to paraphrase the language of the Supreme Court in its opinion in the recent combined cases of United States v. Koppers Co. (Premier Oil Refining Co. v. United States), 348 U.S. 254, 263, 75 S.Ct. 268, we find nothing to justify a greater tax advantage to any taxpayer who underpays his correct tax, over one who pays such tax in full when due. Our income tax law is premised largely on the theory of self-assessment. 9 Merten's Law of Federal Income Taxation, Sec. 49.02, p. 6.

It follows that on January 14, 1945, just before he met his death, Knauer was indebted to the Government in the amount of $5,454.64, the sum of his deficiencies in income taxes for the years 1943 and 1944, thereafter determined. At that time, just before Knauer's death, the cash surrender value of his insurance policies could be subjected to the payment of his income tax indebtedness to the Government. That is conceded by the appellee in brief: "We readily admit that the interest of the wife and children as beneficiaries of the insurance policies during the lifetime of the insured, was only an inchoate interest and their rights were not vested rights. * * * We freely concede that had the debt here sought

"Sec. 222.13 Life insurance policies; disposition of proceeds

"Whenever any person shall die in this state leaving insurance on his life, the said insurance shall inure exclusively to the benefit of the child or children and husband or wife of such person in equal portions, or to any person for whose use and benefit such insurance is declared in the policy; and the proceeds thereof shall in no case be liable to attachment, garnishment or any legal process in favor of any creditor of the person whose life is so insured, unless the insurance policy declares that the policy was effected for the benefit of such creditor; provided, however, that whenever the insurance is for the benefit of the estate of the insured or is payable to the estate or to the insured, his executors, administrators or assigns, the proceeds of the insurance may be bequeathed by the insured to any person whatsoever or for any uses in like manner as he may bequeath or devise any other property or effects of which he may be possessed, and which shall be subject to disposition by last will and testament.

"Sec. 222.14 Exemption of cash surrender value of life insurance policies from legal process.

"The cash surrender values of life insurance policies issued upon the lives of citizens or residents of the State of Florida, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor of any creditor of the person whose life is so insured, unless the insurance policy was effected for the benefit of such creditor."

to be recovered been actually determined, assessed and demand therefor made during the lifetime of the insured, that the Government could have instituted an action against the insured as defendant and subjected the cash surrender value to its lien and collected the same through its action. See Smith v. Donnelly [D.C.], 65 F.Supp. 415; Cannon v. Nicholas [10 Cir.], 80 F.2d 934; Kyle v. McGuirk [3 Cir.], 82 F.2d 212."

The cash surrender value of the insurance policies just before Knauer's death amounted to $9,227.98, more than enough to pay the indebtedness then owing to the Government of $5,454.64. That indebtedness had priority if Knauer was insolvent, 31 U.S.CA. § 191, but actually such cash surrender value was also enough to discharge his then indebtedness in the amount of $1,407.88 to others than the Government. In addition, Knauer at that time owned other property amounting to at least $7,954.65. There can then be no doubt that if Knauer had returned the correct amounts of his income taxes for 1943 and 1944, those amounts would have been paid, if not out of his earnings, then out of his properties.

Knauer's death on January 14, 1945, was the event in respect of which the estate tax was laid. Griswold v. Helvering, 290 U.S. 56, 58, 54 S.Ct. 5, 78 L.Ed. 166. Again, it makes no difference that there had been no assessment and the amount of the estate tax had not then been determined; the estate must be considered as indebted to the Government in the amount of estate tax thereafter determined and assessed, $11,201.01, as of and immediately after Knauer's death on January 14, 1945. Detroit Bank v. United States, 317 U.S. 329, 332, 63 S.Ct. 297, 87 L.Ed. 304; Fernandez v. Wiener, 326 U.S. 340, 354, 66 S.Ct. 178, 90 L.Ed. 116; Smythe v. United States, 1 Cir., 169 F.2d 49, 50; 26 U.S.C.A. § 827, Note 5.

The widow, then, received Knauer's estate, as if it were subject to two indebtednesses to the Government, one for income taxes accrued prior to his death and the other for estate tax attaching as of the date of his death. Both Government indebtednesses had priority over all other debts of the estate, 31 U.S.C.A. § 191. There were, at the time of his death, ample assets of the estate, other than the proceeds or cash surrender value of the insurance, to pay such accrued income taxes, $7,954.65 with which to pay $5,-454.64. In fact, such other assets were sufficient also to pay the other estate debts, $1,407.88, with the exception of the estate tax.

The liability for estate tax was brought about by reason of the inclusion in the estate of the proceeds of life insurance payable to the widow. 26 U.S.C.A. § 811 (g) (2). See Footnote 1, supra. The appellee concedes in brief, " * * * we readily admit that the inclusion of the insurance created liability for estate taxes of $11,201.01 * * *."[6] The widow, as administratrix, was entitled to recover from herself personally, and she was personally liable for such portion of the total estate tax as the proceeds of the policies bore to the sum of the net estate and the amount of the exemption allowed in computing the net estate. 26 U.S.C.A. §§ 826(c), 827(b), (Footnote 2 and 3, supra); Treasury Regulations 105, § 81.27.[7]

---

6. That may not have been true under the Florida statutes quoted in Footnote 5, supra, and the federal Act as it existed prior to 1942. Section 811(g) (2) was added by the Act of October 21, 1942, 53 Stat. 120 amended Oct. 21, 1942, § 404(a), 56 Stat. 944, and was not considered in Webster v. Commissioner of Internal Revenue, 5 Cir., 120 F.2d 514, nor in Flick's Estate v. Commissioner of Internal Revenue, 5 Cir., 166 F.2d 733. Section 811(g), as it read at the time of those decisions, was substantially quoted by Judge Waller in 166 F.2d at the bottom of page 736 and top of page 737, where he italicized the expression "receivable by the executor." That was the important provision also in the Webster case, supra.

7. "Sec. 81.27 (as amended by T.D. 5239, 1943 Cum.Bull. 1081)
"*Insurance receivable by other beneficiaries.*—(a) *In case of decedent dying after October 21, 1942.*
* * * * *

The right of the administratrix to force contribution from the widow beneficiary in the proportions set out in Section 826(c), supra [see also Section 827 (b), supra], was one of the assets of the estate. That is true, notwithstanding that, in the absence of the controlling federal statutes, the proceeds of the insurance would have inured exclusively and directly to the widow under the Florida statutes quoted in footnote 5, supra.[8] The widow as administratrix of course owed a primary duty to the United States and other creditors to collect all of the assets of the estate. 33 C.J.S., Executors and Administrators, § 167; 21 Am.Jur., Executors and Administrators, Sec. 221. To the extent that she failed to collect from herself personally any of the assets of the estate, the widow would be liable. Assuming that the assets had been collected, the widow was not entitled to participate in a distribution of the estate until, as administratrix, she had discharged both of the indebtednesses to the Government. To the extent that she used the assets of the estate other than the life insurance proceeds to satisfy the estate tax, for which as the recipient of the life insurance proceeds she was personally liable, she must be deemed to have received the benefit of such other estate assets and to have made a distribution to herself before discharging the liabilities of the estate. Stated otherwise, in effect, for estate tax purposes the insurance proceeds were a part of the estate; so considered, it was the duty of the widow, as administratrix, to collect such assets and to handle the estate in such a manner that all of its liabilities would be discharged before she received any distribution from the estate or any of the proceeds of the insurance liable for the payment of estate tax. The principle is closely akin to the equitable doctrine of marshalling. See 35 Am.Jur., Marshalling Assets & Securities, Sec. 2; Sowell v. Federal Reserve Bank, 268 U.S. 449, 456, 457, 45 S.Ct. 528, 69 L.Ed. 1041. The liability of the widow arises by virtue of 26 U.S.C.A. §§ 811(g) (2), 826(c) and 827(b), (See footnotes 1, 2 and 3, supra), and there is no necessity to decide the interesting questions presented as to liability of the widow as transferee.

The judgment is, therefore,

Reversed.

HUTCHESON, Chief Judge (dissenting).

The majority opinion has not decided the sole question presented and decided below and argued here and on briefs, whether the appellee was liable as a transferee under Section 827(b), 26 U.S.C. It has, however, found the judge

"For the purposes of this section, the term 'incidents of ownership' is not confined to ownership in the technical legal sense. For example, a power to change the beneficiary reserved to a corporation of which the decedent is sole stockholder is an incident of ownership in the decedent. For the purposes of this subsection, the term 'incidents of ownership' includes the incidents of ownership described in subsection (b) * * *.

"(b) In case of decedent dying on or before October 21, 1942.—The regulations prescribed under this subsection (except as otherwise indicated herein or in subsection (a) of this section) are applicable only in the case of decedents who died on or before October 21, 1942, the date of the enactment of the Revenue Act of 1942. * * *

"Incidents of ownership in the policy include, for example, the right of the insured or his estate to its economic benefits, the power to change the beneficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge it for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. The insured possesses an incident of ownership if his death is necessary to terminate his interest in the insurance, as, for example, if the proceeds would become payable to his estate, or payable as he might direct, should the beneficiary predecease him. * * *"

8. This Court has given effect to those Florida statutes in several decisions not in conflict with the present holding. See Webster v. Commissioner of Internal Revenue, supra; Flick's Estate v. Commissioner of Internal Revenue, supra; New York Life Insurance Co. v. Valz, 5 Cir., 141 F.2d 1014; Johnson v. Remy, 5 Cir., 220 F.2d 73.

in error on a theory of its own, not considered or put forward either by the parties or the trial court, and, in my opinion, not within the compass of the issues raised or tendered below or here. Because this is so, I have concluded to present the case and give my opinion with respect to it as it was presented and decided below and came and was presented here for decision, reserving for the foot of my opinion my comments upon the theory upon which my brothers have put the judge in error and reversed his judgment.

Brought by appellant, plaintiff below, against the appellee, defendant below, the widow and administratrix of Francis Knauer, deceased, the suit involved deficiencies in his individual income taxes for the years 1943 and 1944.

The claim was that the defendant had received from her deceased husband, under circumstances obligating her as transferee to pay the deficiencies, proceeds of life insurance policies, payable to her as beneficiary, sufficient in amount to discharge them.

The defense was a denial that she had received any assets personally from her deceased husband or his estate, and an affirmative plea: that the policies of insurance were payable to her as beneficiary; that her husband had died without undertaking to exercise any control over the policies; that any right that he may have had in and to them prior to his death had expired with it; and that, therefore, she could not be held liable as transferee of the proceeds or any part thereof.

Tried to the court without a jury on facts which were stipulated or undisputed, there were findings of fact [1] and conclusions of law, and a judgment in favor of defendant.

Appealing from the judgment, the United States is here urging that the judgment was wrong and may not stand.

I cannot agree. On the contrary, I think it clear: that the defendant did not receive from the deceased either the proceeds of the policies as a whole or the cash surrender value thereof; or any part of the property of his estate; that all of these proceeds, under the controlling Florida statute,[2] inured exclusively

[1.] These were:

The plaintiff is the United States of America and the defendant is the widow and administratrix of the Estate of Francis A. Knauer.

The deceased, Francis A. Knauer, died in an automobile accident on Jan. 14, 1945.

The defendant was appointed Administratrix of the Estate of Francis A. Knauer on Feb. 6, 1945.

The personal estate of the deceased amounted to $7,954.65.

The deceased had, in full force and effect at the time of his death, insurance policies in the double indemnity amount of $90,838.31, with a cash surrender value before the death of the deceased in the total amount of $9,227.98. The proceeds of insurance in the amount of $90,838.31 have inured to the benefit of the defendant.

Estate taxes were paid in the amount of $8,753.39.

Deficiency estate taxes in the amount of $2,447.62 were paid by the defendant, making a total of estate taxes paid of $11,201.01.

The assets of the estate were exhausted, and the defendant has used personal assets and proceeds of a gift, in paying the estate taxes.

On Dec. 19, 1947, the United States assessed a deficiency assessment against the estate for a deficiency in the income taxes due from the deceased in the year 1943 in the amount of $3,858.17.

On Dec. 19, 1947, the United States assessed a deficiency assessment against the estate for a deficiency in the income taxes due from the deceased in the year 1944 in the amount of $1,596.47.

[2.] 11 Florida Statutes Annotated:

"Title XIV—Homestead and Exemptions

"Sec. 222.13 Life insurance policies; disposition of proceeds

"Whenever any person shall die in this state leaving insurance on his life, the said insurance shall inure exclusively to the benefit of the child or children and husband or wife of such person in equal portions, or to any person for whose use and benefit such insurance is declared in the policy; and the proceeds thereof

and directly to her; and that she was not obligated, as transferee of property of the deceased, within the meaning of the invoked statute,[3] to pay the deficiencies.

As to the meaning and effect of the Florida statute, this court, beginning with *Webster v. Commissioner of Internal Revenue*, 5 Cir., 120 F.2d 514, and continuing in *New York Life Insurance Co. v. Valz*, 5 Cir., 141 F.2d 1014, *Flick's Estate v. Commissioner of Internal Revenue*, 5 Cir., 166 F.2d 733, and *Johnson v. Remy*, 5 Cir., 220 F.2d 73, has given effect without varying to the decisions of the Florida courts, holding that, where under the Florida Statute the wife is the beneficiary, the proceeds of life insurance policies do not pass to the executor or administrator of the insured's estate but inure to the benefit of and go directly to the beneficiary. This court, too, in *Liquidators of Exchange National Bank of Shreveport v. United States*, 5 Cir., 65 F.2d 316, early held that whether or not one is obligated as transferee to pay the tax of another is governed by the law of the state where the transaction occurs and that where the transfer under state law would not be impeachable as to creditors, it would not be as to the United States, and this view has been followed in the Sixth Circuit, *Tyson v. C. I. R.*, 212 F.2d 16; in the Second Circuit, in *Rowen v. Commissioner*, 215 F.2d 641; and in the Seventh Circuit in *United States v. New*, 217 F.2d 166. Cf. *Shelton v. Gill*, 4 Cir., 202 F.2d 503, at page 506.

The law standing thus, if the law as established in Florida and in this circuit is followed, the defendant was not a transferee within the meaning of the invoked section as to the proceeds of the policy, including the cash surrender value, because she did not receive the proceeds or any part thereof from the decedent but directly under the statute law of Florida. If, on the other hand, it be held, as was held in the Rowen case, that the defendant was transferee as to the cash surrender value of the policies, though not as to the balance of the proceeds, it must, since there was no proof that the decedent was insolvent at his death but, on the contrary, the evidence showed that he was solvent, be held that no liability as transferee was imposed upon her. I think it is quite plain, therefore, that the defendant was not a transferee; that in no event could the United States prevail against her as such; that the conclusion of the judge, that it was not, was right; and that this being so, the judgment must be affirmed.

And now for a word or two with respect to the theory upon which the majority predicates liability, a theory, as I understand the matter, not heretofore advanced in this or any other similar case.

This theory is that Section 826(c)[4] imposes upon recipients of insurance, the

---

shall in no case be liable to attachment, garnishment or any legal process in favor of any creditor of the person whose life is so insured, unless the insurance policy declares that the policy was effected for the benefit of such creditor; provided, however, that whenever the insurance is for the benefit of the estate of the insured or is payable to the estate or to the insured, his executors, administrators or assigns, the proceeds of the insurance may be bequeathed by the insured to any person whatsoever or for any uses in like manner as he may bequeath or devise any other property or effects of which he may be possessed, and which shall be subject to disposition by last will and testament."

"Sec. 222.14 Exemption of cash sur-

render value of life insurance policies from legal process.

"The cash surrender values of life insurance policies issued upon the lives of citizens or residents of the State of Florida, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor of any creditor of the person whose life is so insured, unless the insurance policy was effected for the benefit of such creditor."

3. 26 U.S.C.A. § 311(f), 53 Stat. 90.

4. 26 U.S.C.A. § 826(c), enacted with minor changes in phraseology as Section 2206 of the 1954 Internal Revenue Code:

"*Liability of life insurance beneficiaries.* Unless the decedent directs otherwise in

value of which has been included under Section 811 in the gross estate of the decedent, an obligation in favor of the United States, or for that matter of any other creditor, to pay into the estate a proportionate amount thereof, such that if they do not pay it in, the United States, or for that matter any other creditor, can compel them to do so to the extent necessary to satisfy an unpaid debt of the estate. As sought to be applied here, this supposed obligation exists, though the United States has already received out of the assets of the estate plus a contribution by the insurance beneficiary sufficient to make up the difference between the value of the assets and the claim for estate taxes, payment in full of its claim for estate taxes, the only claim to which Section 811 applies.

No language in the section in terms affording the United States or other creditors the remedy claimed is pointed to by my brothers. Their view seems to be that if the United States and the defendant had been aware, before the estate taxes were paid, of its claim for the income tax, much later assessed and asserted, payment of the income tax would have been first demanded and made, and the United States would then have been in a position to invoke and would have invoked, for the payment of its unpaid estate tax claim, the provisions of Section 811(g) (2).

Proceeding on this assumption, the majority argues in effect that what was actually done must be disregarded and the situation must be viewed on a what ought to or might have been done basis. In short, the estate taxes must be regarded as unpaid, the money of the estate which was actually used to pay them as not so used, and as remaining in the estate for application to the payment of the income tax and to the extent that the estate tax would under this assumption remain unpaid, the obligation of the beneficiary to pay, imposed by Section 811(g), would be still existing and enforceable.

If, however, there is one proposition in tax law which has been and remains settled, it is that taxes go not on what ought to or might have been done but on what actually was done, whether the result, as in Jeffries v. Commissioner of Internal Revenue, 5 Cir., 158 F.2d 225,[5] was an apparently unjust and heavy burden on the taxpayer, or, as is claimed here, imposes a loss upon the government.

Another basis seems to be that the United States which has received full payment of its estate taxes and which therefore had no claim for estate taxes to satisfy, is somehow subrogated to, or entitled to exercise, the right accorded the executor of the estate, when he has paid the estate tax in full and where, as here, the decedent has not provided otherwise, to enforce contribution from the beneficiary.

With deference, all of these ideas are based not upon reality but upon a hypostasis. The plain and simple facts here

his will, if any part of the gross estate upon which tax has been paid consists of proceeds of policies of insurance upon the life of the decedent receivable by a beneficiary other than the executor, the executor shall be entitled to recover from such beneficiary such portion of the total tax paid as the proceeds of such policies bear to the sum of the net estate and the amount of the exemption allowed in computing the net estate, determined under section 935(c). If there is more than one such beneficiary the executor shall be entitled to recover from such beneficiaries in the same ratio. In the case of such proceeds receivable by the surviving spouse of the decedent for which a deduction is allowed under section 812(e) (the so-called 'marital deduction'), this subsection shall not apply to such proceeds except as to the amount thereof in excess of the aggregate amount of the marital deductions allowed under such subsection."

5. In that case at page 226, we said: "Whether a transaction or result is taxable and what the tax is is not a matter to be determined in law upon considerations of general justice or equity. It is a matter of statutes and valid regulations, and what they mean. Neither is it to be determined in fact upon considerations of what was intended to be done. Rather it is to be determined by what was done. * * * Taxation deals not with what was attempted to be done but with what was done. * * *"

And in United States v. Clark, 5 Cir., 159 F.2d 489, we again gave effect to those views.

are that the United States has no claim for estate taxes and is in no position to invoke any of the rights or remedies accorded to anyone with respect to them. It has only a claim for income taxes and, as pointed out in the Rowen case, supra, a claim based upon Section 811(g) does not extend to the collection of income taxes but is limited and applies only to unpaid estate taxes.

Finally and generally, the majority apparently proceeds upon the theory that it was the duty of the widow to collect from herself and pay into the estate the amount of the estate tax attributable to the inclusion of the insurance policies in the estate, though at the time the estate tax was settled there was nearly sufficient money in the estate to pay those taxes and there was no other claim or debt being asserted by anyone, including the United States, against the estate. This seems to me to be applying with a vengeance to the widow and the insurance provided by the husband for her protection, and under the Statutes of Florida inuring directly to her, the principle that nothing is certain but death and taxes.

I respectfully dissent.